CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Appellants,

v.

John D. ASHCROFT, Attorney General of the United States and Ruth A. Harvey, Attorney, Civil Division, Department of State, Appellees.

No. 01–5107.

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 2002.

Decided April 23, 2002.

Philip P. Kalodner argued the cause and filed the briefs for appellant.

Bruce G. Forrest, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and William Kanter, Deputy Director, U.S. Department of Justice.

Before: SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Following decades of oil overcharge litigation under the Economic Stabilization Act of 1970, the United States Attorney General recovered a multi-million dollar judgment on behalf of thirty-seven utilities, including the three appellants. Awarded by the United States District Court for the Southern District of Alabama, that judgment included an $800,000 surcharge payable to the Attorney General pursuant to the Federal Debt Collection Procedures Act. Appellants then filed suit in the United States District Court for the District of Columbia seeking a writ of mandamus that would direct the Attorney General to pay the $800,000 to them. Concluding that Appellants failed to show that the Attorney General's retention of the surcharge amounted to a violation of a clear ministerial duty that would warrant mandamus, the district court denied the writ. We agree.

### I.

The now-defunct Economic Stabilization Act of 1970 (ESA), as amended, 12 U.S.C. § 1904 note, gave the President broad authority to "issue such orders and regulations as he may deem appropriate to stabilize prices." Pub. L. 91–379, § 202, 84 Stat. 799, 799 (1970) (expired 1974). Acting pursuant to delegated ESA authority, *see id.* § 203, 84 Stat. at 800, the Secretary of Energy created price controls for crude oil. Under the ESA, the Attorney General (as well as private parties) has authority to seek restitution for any "sale of goods or services exceed[ing] the applicable ceiling under regulations or orders issued under this title." Economic Stabilization Act Amendments of 1971, Pub. L. 91–379, §§ 209–10, 85 Stat. 743, 748 (1971).

In 1977, the Attorney General intervened in litigation pending in the United States District Court for the Southern District of Alabama to obtain ESA restitution on behalf of thirty-seven utilities that had purchased crude oil at prices exceeding Department of Energy limits. Among the thirty-seven utilities were the three appellants: Consolidated Edison, Long Island Lighting Company, and Niagara Mohawk Power Corporation, to whom we will refer collectively throughout this opinion as "Edison." Eleven years of litigation later, the Alabama district court awarded a judgment of approximately $30 million in the Attorney General's favor. Following another decade of litigation caused by the sellers' efforts to escape payment, the court entered a final judgment of $15.75 million. Pursuant to court order, the funds were deposited into a Department of Energy escrow account for distribution to the thirty-seven judgment beneficiaries on a pro rata basis.

Central to this case, the Alabama judgment included an $800,000 surcharge payable to the Attorney General pursuant to the Federal Debt Collection Procedures Act. That Act provides that the U.S. government "is entitled to recover a 10% surcharge of the amount of the recovered debt in connection with recovery of the debt." 28 U.S.C. § 3011(a).

After the Alabama district court denied Edison's motion to intervene to challenge the surcharge, Edison filed suit in the United States District Court for the District of Columbia seeking a writ of mandamus that would direct the Attorney General to remit the $800,000 surcharge to the Department of Energy for transmission to the judgment beneficiaries. According to Edison, nothing in the Debt Collection Act authorized the surcharge. Finding that "the decision of the Justice Department to pursue recovery of a surcharge ... is not a ministerial act[,] ... and it clearly is not so free from doubt that the Government didn't have the authority and the discretion to seek to invoke [the Debt Collection Act]," Tr. Mots. Hr'g of 1/30/01 at 6, the district court dismissed the complaint. Edison filed simultaneous appeals in this court and the United States Court of Appeals for the Federal Circuit, and successfully moved to stay the latter appeal pending the resolution of this one.

### II.

Before addressing the mandamus issue, we must consider the Attorney General's arguments that jurisdiction lies exclusively in the Federal Circuit and that, in any event, Edison lacks Article III standing. We consider each argument in turn.

■ The Attorney General's first argument rests on ESA section 211, which placed exclusive jurisdiction over "cases or controversies arising under" that statute in a specialized federal court, the Temporary Emergency Court of Appeals. Economic Stabilization Act Amendments of 1971, Pub. L. 92–210, § 211(a), 85 Stat. 743, 748 (1971). That court has since been dis-

solved and its jurisdiction transferred to the Federal Circuit. *See* Federal Courts Administration Act of 1992, Pub. L. 102–572, § 102(a), 106 Stat. 4506, 4506 (1992) (abolishing the Temporary Emergency Court of Appeals); *id.* at § 102(b), 106 Stat. at 4506 (codified as amended at 28 U.S.C. § 1295(a)(11)) (establishing exclusive Federal Circuit jurisdiction over ESA issues). The Federal Circuit construes its ESA jurisdiction narrowly. In *Texas American Oil Co. v. United States Department of Energy,* the Federal Circuit held that it possesses only " 'issue' jurisdiction, not 'case' or 'arising under' jurisdiction" over ESA issues, emphasizing that such a holding "steadfastly implement[s] the jurisdictional policy and practice of deciding only the ESA issues in a case, leaving to the regional circuit courts all other issues arising in the same transaction or joined to [the] ESA issues." 44 F.3d 1557, 1563 (Fed.Cir.1995). In other words, the Federal Circuit will only "decide certain questions that do not aris[e] independently of the substantive [ESA] claim or cause of action and have no life apart from that substantive claim." *Stertz v. Gulf Oil Corp.,* 783 F.2d 1064, 1069 (Temp. Emer. Ct.App.1986) (alterations in original) (internal quotation marks and citations omitted). The Federal Circuit uses a two-part test for determining whether an issue falls within its exclusive ESA jurisdiction. First, resolution of the litigation must require application or interpretation of the ESA or regulations issued thereunder; and second, the ESA issue must have been adjudicated in the district court. *Tex. Am.,* 44 F.3d at 1563.

The issue raised here fails the first element of the *Texas American* test. Although the litigation leading to this appeal has its origins in the ESA, the substantive question under that statute—whether Edison was entitled to restitution for alleged oil overcharges—was long ago resolved by the Alabama district court. Moreover, the issue Edison now raises—whether the Debt Collection Act authorizes the Attorney General's $800,000 surcharge—requires neither interpretation nor application of the ESA. Asked at oral argument to identify any ESA issues we must decide to resolve this appeal, the Attorney General's counsel candidly conceded there are none. Because the Debt Collection Act question has "life apart" from the substantive ESA cause of action that gave rise to this litigation decades ago, we have jurisdiction to consider it.

This result comports with decisions of both the Supreme Court and one of our sister circuits holding that issues relating to enforcement of an ESA judgment fall outside the Federal Circuit's exclusive jurisdiction if they require neither interpretation nor application of the ESA. In *Bray v. United States,* the Supreme Court held that the Temporary Emergency Court of Appeals' exclusive jurisdiction did not encompass an appeal of a contempt proceeding growing out of a party's refusal to produce documents subpoenaed in connection with a possible ESA violation. 423 U.S. 73, 73–74, 96 S.Ct. 307, 308–09, 46 L.Ed.2d 215 (1975). "Although the contempt charge related to an order entered in connection with an investigation of [ESA] violations," the Court explained, "it was not dependent on the existence of such violations," and thus sufficiently separate from the substantive ESA issues that the Tenth Circuit should have exercised jurisdiction. *Id.* at 75–76, 96 S.Ct. at 309–10. Similarly, in *Citronelle-Mobile Gathering Inc. v. Watkins,* the Eleventh Circuit reviewed a challenge to a district court's appointment of a receiver whose sole purpose was to enforce an ESA judgment. 934 F.2d 1180, 1184–85 (1991). The court pointed out that because "appellants' liability for ESA ... violations has already been fully litigated, ... [t]here remains no question of liability based on those ...

violations." *Id.* at 1185. It went on to hold that because "the issues on this appeal concern the post-judgment enforcement of the . . . decision," the challenge to the appointment was not integrally related to the ESA, thus not within the Federal Circuit's exclusive jurisdiction. *Id.* Here too, determining whether the Attorney General may retain the Debt Collection Act surcharge does not require that we review—or even question—the Alabama district court's conclusion that the ESA entitles Edison to restitution for the oil overcharges.

Insisting that this case nevertheless belongs in the Federal Circuit, the Attorney General claims that the district court here considered "an important issue requiring the interpretation of the . . . ESA," namely, whether "plaintiffs failed to state a claim under the Economic Stabilization Act." Appellee's Br. at 17, 18. It is true that the district court ruled that because "there is no private right of action under the Economic Stabilization Act Amendments of 1971[,] . . . there is no standing," and therefore extensively considered the ESA's provisions for public and private rights of action as well as related Federal Circuit decisions. Tr. Mots. Hr'g of 1/30/01 at 6, 6–11. The district court's ESA discussion, however, has no effect on our jurisdiction. As the Federal Circuit has repeatedly emphasized, its ESA jurisdiction is issue-specific, and the issue we must resolve in this appeal does not require in that Edison state a cause of action under the ESA. Instead, because Edison sought a writ of mandamus, whether it stated a cause of action depends on the All Writs Act, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

■ Next, the Attorney General contends that Edison seeks to "split" its appeal, and that the company intends to follow up any adverse result on the merits by briefing the same issues again in its pending appeal in the Federal Circuit. Appellee's Br. at 18–19. A bifurcated appeals process, however, seems precisely what the Federal Circuit's issue-based approach contemplates: "[A]ny issue requiring interpretation or applications of the . . . ESA[ ] or related regulations has been held to be within the exclusive purview of the [Federal Circuit], and separated from the appeal of any other substantive issue." *Tex. Am.*, 44 F.3d at 1563. In any event, no duplicative merits determinations could occur, for if we have jurisdiction over the Debt Collection Act issue, that issue would necessarily fall outside the Federal Circuit's exclusive ESA jurisdiction.

■ Finally, the Attorney General cites *Texas American* for the proposition that "[w]hen the [Federal Circuit] has taken jurisdiction [of ESA issues], the court has occasionally been required to consider and apply laws in interaction with the ESA." *Id.* at 1564. But that proposition—where an issue requires interpretation of both the ESA and another statute, the Federal Circuit can exercise jurisdiction over the non-ESA issue—sheds no light on which questions *this* circuit may entertain. Besides, because the Debt Collection Act issue does not require interpretation of the ESA, *see supra* at 603, no such "interaction" could take place.

■ As to Edison's standing, the Attorney General does not articulate his claim in terms of the familiar constitutional standard: a "concrete and particularized" "injury-in-fact" that is "fairly . . . trace[able]" to the conduct of the defendant and may be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (alterations in original). Instead, he argues, the relief Edison seeks

requires "this court [to] attribute a desire on the part of the Department of Energy to obtain, via judicial fiat, an order running against federal officials from one Executive Branch agency to another." Appellee's Br. at 20. We assume that the Attorney General means that Edison's claim is not redressable—that is, requiring him to remit the surcharge to the Energy Department would fail to redress Edison's claimed injury because it would fail to place the $800,000 in the judgment beneficiaries' corporate hands. This claim, however, ignores the Alabama district court's express requirement that "[w]henever ... the amount held by DOE in escrow for this case ... exceeds $1,000,000, but in any event no less often than once every two years, DOE shall make further *pro rata* payments to the claimants." Order of the United States District Court of the Southern District for Alabama at 2, *Citronelle-Mobile Gathering, Inc. v. Watkins* (May 14, 1992) (No. Civ. 77–101–A). Thus, had the district court here issued the writ and directed the Attorney General to deposit $800,000 in the Department of Energy escrow account, the Alabama district court's order would have required Energy to disburse those funds directly to Edison. Accordingly, the presence of the Department of Energy as an intermediary between Edison and the Attorney General does not deprive Edison of standing.

### III.

■ "[A] 'drastic' remedy, 'to be invoked only in extraordinary situations,'" *In re Papandreou*, 139 F.3d 247, 249 (D.C.Cir.1998) (quoting *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976)), mandamus is inappropriate except where a public official has violated a "ministerial" duty. Such a duty must be "so plainly prescribed as to be free from doubt and equivalent to a positive command.... [W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." *Wilbur v. United States*, 281 U.S. 206, 218–19, 50 S.Ct. 320, 324–25, 74 L.Ed. 809 (1929).

■ We agree with the district court that Edison's showing falls far short of this high standard. To begin with, the Attorney General obtained the surcharge and now retains it pursuant to a federal court order. He is thus complying with—not violating—his legal obligations. Resisting this obvious proposition, Edison argues that the Attorney General's possession of the surcharge is so plainly wrong that it amounts to a violation of a ministerial duty. In our view, however, this argument amounts to a completely inappropriate collateral attack on the Alabama court's judgment. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1946) (holding that mandamus is only available to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so"). Although Edison never formally asked the district court here to mandamus the Alabama district court, the relief it seeks amounts to exactly the same thing, for however phrased, Edison's complaint challenges the Alabama district court's interpretation of the Debt Collection Act.

Even if we were free to consider Edison's arguments, they would provide no basis for mandamus. Edison first claims that "this is simply a case in which a lawyer is withholding funds improperly from his client," Appellants' Opening Br. at 32, thus violating a duty that is "ministerial, plainly defined, peremptory, and owed to the plaintiff," *id.* (quoting *Public Citizen v. Kantor*, 864 F.Supp. 208, 212 (D.D.C.1994)). The cases Edison cites,

though, all involve attorneys refusing to pay funds courts had awarded to clients. Here, by contrast, the Alabama district court ordered the $800,000 paid to the Attorney General. *See* Order of the United States District Court for the Southern District of Alabama at 2, *Citronelle-Mobile Gathering, Inc. v. Peña* (Sept. 23, 1997) (No. Civ.77–101–A).

Equally without merit is Edison's argument that the Debt Collection Act so plainly does not authorize the surcharge that the Attorney General wrongly possesses the $800,000 and should therefore be required to remit it to the judgment beneficiaries. According to Edison, the "essence of the authorized 'surcharge' is that it be imposed on the debtor as an *addition* to the judgment debt," and "the withholding by the Attorney General of funds due clients from the partially collected judgment is a 'surcharge' not upon the debtor, but upon the Judgment Beneficiaries." Appellants' Opening Br. at 24. We agree with the district court that this argument is "somewhat of a stretch." Tr. Mots. Hr'g of 1/30/01 at 14. While the term "surcharge" might refer to an amount added on to—not subtracted from—the judgment, the Debt Collection Act's language by no means unambiguously requires this conclusion, and Edison cites no authority, other than *Webster's Dictionary,* to support its interpretation. The dictionary, however, provides no basis for concluding that the Attorney General of the United States violated a duty "so plainly prescribed as to be free from doubt and equivalent to a positive command."

The district court's dismissal of the complaint is affirmed.

*So ordered.*