303 F.3d 1310
 CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Long Island Lighting Company, Orange and Rockland Utilities, Inc., Southern California Edison Company, Pacific Gas & Electric Company, San Diego Gas & Electric Company, International Paper Company, Westvaco Corporation, and Weyerhauser Company, Plaintiffs-Appellants,
v.
Spencer ABRAHAM, Secretary of Energy and George B. Breznay, Director, Office of Hearings and Appeals, Defendants-Appellees.
 No. 01-1566.
 United States Court of Appeals, Federal Circuit.
 Decided: May 31, 2002.
 
 Phillip P. Kalodner, of Gladwyne, PA, argued for plaintiffs-appellants.
 Thomas H. Kemp, Attorney, Office of the General Counsel, Department of Energy, of Washington, DC, argued for defendants-appellees. Of counsel was Stephen C. Skubel, Attorney.
 Before SCHALL, BRYSON, and LINN, Circuit Judges.
 BRYSON, Circuit Judge.
 
 
 1
 The plaintiffs, a group of utilities and manufacturers that consume petroleum products, have appealed from a decision of the United States District Court for the District of Columbia, which ruled against them on their request for attorney's fees. Although they have appealed to this court, they are in the unusual posture (for appellants) of arguing that this court lacks jurisdiction over their appeal. They contend that their appeal lies to the United States Court of Appeals for the District of Columbia Circuit. The government appellees argue that we have jurisdiction and urge us to affirm the district court's order denying fees. We agree with the plaintiffs that this court lacks jurisdiction, and we therefore dismiss the plaintiffs' appeal. Because the plaintiffs have filed a separate notice of appeal to the District of Columbia Circuit, it is not necessary for us to transfer the case to that court for further proceedings.
 
 
 2
 * This case is another in the seemingly endless stream of cases flowing from litigation over actions taken under the petroleum price control scheme that was in place in this country during the 1970s. See Economic Stabilization Act of 1970 ("the ESA"), Pub. L. No. 91-379, 84 Stat. 799 (1970), as amended, Pub. L. No. 92-210, 85 Stat. 743 (1971), codified at note following 12 U.S.C. § 1904 (1976) (expired Apr. 30, 1974); Emergency Petroleum Allocation Act of 1973 ("the EPAA"), Pub. L. No. 93-159, 87 Stat. 627 (1973), codified at 15 U.S.C. §§ 751-760 (1976), repealed by Energy Policy and Conservation Act of 1975, Pub. L. No. 94-163 § 401(b)(1), 89 Stat. 871, 946 (1975), codified at 15 U.S.C. § 753 (1976). Although the statutes and the associated Department of Energy regulations that established and governed the petroleum price control program have long since expired, the litigation flowing from the program continues on.
 
 
 3
 The initial step in the long chain of events that led to this case was a decision by the Department of Energy in 1980 to grant an exception to the existing price control system for a particular petroleum producer, the so-called "Citronelle Unit." Under the exception, the Citronelle Unit was allowed to charge customers the market price for its crude oil rather than the lower, controlled price. The funds that represented the difference between the market price and the controlled price for the crude oil were set aside in an escrow fund that was supposed to be used for a tertiary oil recovery program. The program, however, was abandoned shortly after it was initiated, and the funds in the escrow account remained unallocated for several years.
 
 
 4
 In 1989, a settlement was proposed for distributing the Citronelle Unit escrow funds. Under the proposed agreement, the funds were to be divided among the Citronelle Unit, the oil refiners to which the Unit's crude oil was sold, and the Department of Energy.
 
 
 5
 A group of companies that consumed petroleum products, including the plaintiffs in this action, challenged the settlement proposal, and in 1991, the Office of Hearings and Appeals ("OHA") within the Department of Energy rejected the proposal. There followed extended litigation over which parties would receive what portions of the Citronelle escrow fund. In 1995, the parties to that litigation finally settled the dispute over the distribution of the escrow fund and executed what is known as the "Citronelle Agreement." The Agreement provided that the proceeds of the escrow fund would be distributed to crude oil purchasers, the Department of Energy, the States, and "end users" of refined oil products, such as utility companies, manufacturers, and airlines. The Agreement apportioned the escrow funds by establishing separate accounts for refunds to various parties to the Agreement. One of the accounts was the "End Users Account," from which payments were to be made to the end user claimants, including the plaintiffs. In addition to setting up separate accounts for the various groups of claimants, the Agreement provided that interest on the various accounts would be placed in a separate account, the "Post Apportionment Citronelle Escrow Account," which would be used to pay claims of entities who were not parties to the Agreement and whose claims had not been resolved by the Department of Energy at the time the Agreement was executed. Those parties included the "Refiner Cooperatives," a group of agricultural cooperatives that purchased crude oil, refined it, and distributed the refined products to their user members.
 
 
 6
 In 1996, OHA awarded the Refiner Cooperatives $1.7 million from the Post Apportionment Citronelle Escrow Account. The plaintiffs challenged that award on the ground that the Refiner Cooperatives had waived their right to some or all of the Citronelle escrow funds by entering into a separate agreement involving crude oil overcharges. The plaintiffs' challenge to the $1.7 million award was rejected, but following its rejection, the plaintiffs sought attorney's fees for their role in the litigation over that fund.
 
 
 7
 OHA rejected the plaintiffs' argument and held that under the Citronelle Agreement the only fees to which they were entitled would have to come from the End Users Account. The district court agreed. The court held that the Agreement limited the plaintiffs to fees from the End Users Account and that they were not entitled to fees from the Post Apportionment Citronelle Escrow Account. In addition, the court held that the plaintiffs had not made out a case for recovering attorney's fees under the "common fund" theory, for two reasons. First, the court held, the plaintiffs have already been paid, as specifically provided in the Agreement, for their contribution to increasing the share of the Citronelle escrow fund for end users, and they have waived all future fee claims to other refunds recovered under the Agreement. Second, the court held, the plaintiffs did not "create, preserve, or increase the value" of any common fund relevant to the fee award at issue, and therefore were not entitled to a recovery of fees under the "common fund" theory. From that judgment, the plaintiffs appealed simultaneously to this court and to the United States Court of Appeals for the District of Columbia Circuit.
 
 II
 
 8
 The plaintiffs argue at the outset that this court lacks jurisdiction over the appeal. Section 211(b)(2) of the Economic Stabilization Act, as amended, Pub. L. No. 92-210 § 2, 85 Stat. 743, 749 (1971), which was subsequently incorporated into the EPAA, assigned appellate jurisdiction over all "cases and controversies arising under [the ESA and the EPAA] or under regulations or orders issued thereunder" to the Temporary Emergency Court of Appeals. In 1992, that jurisdiction was re-assigned to this court. See Pub. L. No. 102-572, 106 Stat. 4506 (1992).
 
 
 9
 Our jurisdiction in ESA/EPAA cases, however, is quite limited. We held in Texas American Oil Corp. v. United States Department of Energy, 44 F.3d 1557 (Fed.Cir.1995) (en banc), that our statutory jurisdiction under section 211(b)(2) of the ESA is limited to "issue" jurisdiction, not "case" or "arising under" jurisdiction. In this respect, we adopted the practice of the Temporary Emergency Court of Appeals, which "steadfastly implemented the jurisdictional policy and practice of deciding only the EPAA/ESA issues in a case, leaving to the regional circuit courts all other issues arising in the same transaction or joined to EPAA/ESA issues." Id. at 1563 (citing, e.g., Atlantic Richfield Co. v. United States Dep't of Energy, 655 F.2d 227, 233 (Temp.Emer.Ct.App.1981)); Texaco Inc. v. United States Dep't of Energy, 616 F.2d 1193, 1196 (Temp.Emer.Ct.App.1979). Accordingly, we held that in order for this court to have section 211(b)(2) jurisdiction over an ESA/EPAA case, "(1) resolution of the litigation must have required application or interpretation of the EPAA/ESA or its regulations, and (2) the EPAA/ESA issue must have been adjudicated in the district court." Id. See also Phoenix Petroleum Co. v. United States Fed. Energy Regulatory Comm'n, 95 F.3d 1555, 1563 (Fed.Cir.1996).
 
 
 10
 This case does not involve an ESA/EPAA issue. It involves merely the interpretation of the Citronelle Agreement, and the application of the "common fund" theory of attorney fee recovery in the context of litigation over the proper allocation of funds from the Citronelle escrow fund. A decision on the merits of the issues presented in this appeal would not require an interpretation or application of the ESA, the EPAA, or any regulations promulgated under those statutes. That much is clear from the nature of the claims as well as from the fact that in the portion of the briefs addressed to the merits of the appeal, neither party cites either of those statutes or the associated Department of Energy regulations. Nor was an ESA/EPAA issue adjudicated in the district court, as is required by our en banc decision in the Texas American case. The district court's detailed opinion contained no express reference to or discussion of the ESA, the EPAA, or the corresponding regulations, nor was the court's judgment based in any way on implicit reliance on any of those authorities.
 
 
 11
 The government makes a brief argument in support of jurisdiction in this court, basing its contention on the fact that "the terms governing the amount of fees had been spelled out in a settlement agreement resolving a case arising under the EPAA." That, however, is not enough to invoke our ESA/EPAA jurisdiction, because the fact that the settlement agreement was executed to resolve a case arising under the EPAA does not mean that any issue in the case involves the application or interpretation of the EPAA. The government is essentially arguing for "arising under" jurisdiction, not "issue" jurisdiction, even though we made clear in Texas American that only the latter is available here.
 
 
 12
 Neither of the two cases on which the government relies persuades us to the contrary. In the first, In re the Department of Energy Stripper Well Exemption Litigation, Appeal of Philip Kalodner re Fee Application, 855 F.2d 871 (Temp.Emer.Ct.App.1988), the court did not advert to the question of jurisdiction, and the court's decision is therefore of no precedential force on the jurisdictional issue. See Fed. Election Comm'n v. NRA Political Victory Fund, 513 U.S. 88, 97, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994); Will v. Mich. Dep't of State Police, 491 U.S. 58, 63 n. 4, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In any event, the attorney fee award at issue in that case required the district court to assess the attorney's work in litigating under the ESA/EPAA, which arguably required the court to assess the ESA/EPAA legal issues with which the attorney had had to contend in order to determine whether he was entitled to the fee sought. In re the Dep't of Energy Stripper Well Exemption Litig., Appeal of Philip Kalodner re Fee Application, 855 F.2d at 873. No such assessment was called for in this case, which turned on an interpretation of the Citronelle Agreement and an application of the "common fund" theory of attorney fee awards.
 
 
 13
 We likewise are not persuaded by the government's reliance on the Tenth Circuit's decision in In re the Department of Energy Stripper Well Litigation, 206 F.3d 1345 (10th Cir.2000). The court there held that a particular appeal arising from an ESA/EPAA proceeding was within the exclusive jurisdiction of this court. The dispute that brought the case before the Tenth Circuit was an effort by a group of claimants to force the Department of Energy to order a refiner to pay $500 million that the claimants argued was owing under the so-called "stripper well settlement agreement." While the court wrote broadly that any controversy involving the interpretation of the stripper well settlement agreement is within the exclusive jurisdiction of this court, id. at 1350, it was not necessary for the court to rule so broadly, as the issues actually before the court involved (1) whether the Department of Energy had unreviewable authority under the ESA/EPAA to determine whether to order a producer to disgorge funds; (2) the correctness of the Department's interpretation of its ESA/EPAA regulations; and (3) whether a particular producer qualified for certain entitlements under ESA/EPAA regulations. Because those issues all involved interpreting or applying the ESA/EPAA and the associated Department of Energy regulations, the court properly held that jurisdiction was vested in this court. In this case, by contrast, no issue that was before the district court or is before us requires any analysis or application of the ESA/EPAA or the Department of Energy regulations.
 
 
 14
 In Consolidated Edison Co. v. Richardson, 232 F.3d 1380 (Fed.Cir.2000), a case not relied on by either party, this court assumed jurisdiction over an appeal concerning the interpretation of a settlement agreement arising from ESA/EPAA litigation. That decision, however, does not support the assumption of jurisdiction in this case. Although the issue of jurisdiction was not addressed in that case, the opinion makes clear that resolving the dispute required the court to interpret one of the Energy Department's price control regulations. See id. at 1384. Accordingly, although the issue in that case, as in this one, was the interpretation of a settlement agreement, the interpretive task required the court to address an ESA/EPAA issue, which is plainly not the case here. That case therefore does not support our exercise of jurisdiction in this case.
 
 
 15
 The authorities that seem to us more applicable to the issues presented in this case are the decision of the District of Columbia Circuit in Consolidated Edison Co. v. Ashcroft, 286 F.3d 600 (D.C.Cir. 2002), and the decision of the Eleventh Circuit in Citronelle-Mobile Gathering, Inc. v. Watkins, 934 F.2d 1180 (11th Cir. 1991). In the first case, the District of Columbia Circuit held that it had jurisdiction over a case that had its origins in a dispute arising under the ESA/EPAA. The issue before the court was whether the Attorney General was required to pay over to certain private parties a surcharge that the government had recovered under the authority of the Federal Debt Collection Procedures Act in the course of ESA/EPAA litigation. Applying the jurisdictional analysis employed in the Texas American case, the District of Columbia Circuit held that because the question as to the propriety of the surcharge "requires neither interpretation nor application of the ESA," the case was not within this court's exclusive jurisdiction. Consol. Edison Co. v. Ashcroft, 286 F.3d at 603.
 
 
 16
 The Eleventh Circuit's decision in the Citronelle-Mobile case is similar. The dispute before the court originated in a case arising under the ESA/EPAA, but the issue on appeal involved only a challenge to the appointment of a receiver to enforce the ESA/EPAA judgment. The court rejected the argument that it lacked jurisdiction over the case, noting that the issue of liability for ESA/EPAA violations had already been fully litigated, and "there remain[ed] no question of liability based on those ESA and EPAA violations." Citronelle-Mobile, 934 F.2d at 1185. Because the issues on appeal "concern the post-judgment enforcement of the [Temporary Emergency Court of Appeals] decision," the court regarded the dispute as not integrally related to the ESA/EPAA and thus not within this court's exclusive jurisdiction. Id.
 
 
 17
 By like reasoning, the attorney fee issues in dispute in this case do not require application or interpretation of the ESA/ EPAA or the associated regulations. Instead, all that is required is the construction of the Citronelle Agreement, and the application of general principles of attorney fee recovery under the common fund doctrine. Accordingly, we conclude that this case belongs in the regional circuit — in this case in the United States Court of Appeals for the District of Columbia Circuit. We therefore dismiss this appeal; our action leaves the plaintiffs free to pursue their pending appeal in that court.
 
 
 18
 Each party shall bear its own costs for this appeal.
 
 
 19
 
 DISMISSED.