Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

—————

Argued March 20, 2006          Decided June 9, 2006

No. 05-5302

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC., ET AL.,
APPELLANTS

v.

SAMUEL W. BODMAN,
SECRETARY OF UNITED STATES DEPARTMENT OF ENERGY AND
GEORGE B. BREZNAY, DIRECTOR, OFFICE OF HEARINGS AND
APPEALS OF THE U.S. DEPARTMENT OF ENERGY,
APPELLEES

—————

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00382)

—————

*Philip P. Kalodner* argued the cause and filed the briefs for appellants.

*Stephen C. Skubel*, Counsel, U.S. Department of Energy, argued the cause for appellees. With him on the brief was

*Thomas H. Kemp*, Counsel.

Before: SENTELLE, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal is the latest iteration in a series of related lawsuits that involve the question whether States and federal agencies can obtain refunds under the 1986 *Stripper Well* settlement.[1]  Consolidated Edison et al. ("the Claimants") appeal the dismissal of their complaint against the Department of Energy ("DOE") and its Office of Hearings and Appeals ("OHA") on the ground that the district court erred in holding that the doctrine of issue preclusion barred the suit.  In light of the interpretation by the United States Court of Appeals for the Federal Circuit of its exclusive jurisdiction of "an appeal under section 211 of the Economic Stabilization Act of 1970," 28 U.S.C. § 1295(a)(11), we hold that this court has jurisdiction to address the preclusion issue and that the district court did not err.  Accordingly, we affirm the dismissal of the complaint.

**I.**

In the early 1970s, the Organization of Petroleum Exporting Countries imposed an oil embargo on the United States, which caused the price of oil to rise dramatically.  *See Consol. Edison Co. of N.Y v. Abraham*, 271 F. Supp. 2d 104 (D.D.C. 2003).  In response, acting under the Economic Stabilization Act of 1970 ("ESA"), Pub. L. No. 92-210, 85 Stat. 743 (former 12 U.S.C. § 1904 note (1971)), and the Emergency Petroleum Allocation Act

---

[1] *See, e.g., Consol. Edison Co. of N.Y. v. O'Leary*, 117 F.3d 538, 545 (Fed. Cir. 1997); *Consol. Edison Co. v. Herrington*, 752 F. Supp. 1082 (D.D.C. 1990), *aff'd*, 927 F.2d 1277 (Temp. Emer. Ct. App. 1991).

("EPAA"), Pub. L. No. 93-159, 87 Stat. 627 (former 15 U.S.C. § 751 *et seq.* (1973)), the DOE imposed price controls on crude oil sold in the United States between 1973 and 1981. When certain producers were found to have violated the price controls and overcharged for crude oil, the DOE obtained refunds from them. *See Consol. Edison Co. v. O'Leary*, 117 F.3d 538, 540 (Fed. Cir. 1997). A long-running and complex lawsuit then commenced regarding the fate of the refunded overcharges. The parties to this litigation, which was known as the *Stripper Well* suit, were the DOE, the fifty States and six Territories and Possessions (the "States"), and various non-governmental entities, including refiners, retailers, and utilities. *In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 110 (D. Kan. 1986) ("*Stripper Well*"). In 1986, the parties entered into a settlement agreement (the "Settlement Agreement") that set forth the scheme for allocating the refunded overcharges, and the district court in Kansas approved the agreement. *See id.*

By the terms of the Settlement Agreement and the DOE's Modified Statement of Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899 (Aug. 4, 1986), the refunded overcharges would be apportioned between parties and non-parties to the *Stripper Well* suit. The non-governmental entities that were parties received certain funds that had been placed in escrow and in return waived all existing and future claims to refunds. *See Stripper Well,* 653 F. Supp. at 114. The remaining funds and any money that was yet to be recovered by the DOE would be split between the government parties, with half going to the DOE and half going to the States. *Id.* at 112-13. For non-parties, the Settlement Agreement directed the DOE to "establish an initial reserve . . . amounting to twenty percent of the funds received by the DOE and to disburse the remaining eighty percent in advance of the implementation of a claims procedure." *Id.* at 114. The DOE and its OHA allocated the 20% portion—the Reserve Fund—among claimants according

to a system known as "Subpart V." *See* 10 C.F.R. Pt. 205, subpt. V.

On March 9, 2004, the Claimants, a group of energy utilities and manufacturers that are entitled to recover from the Reserve Fund, filed a complaint for a declaratory judgment that the federal government and State governments, as well as their respective departments and agencies, are not entitled to recover from the Reserve Fund because they were parties to the Settlement Agreement. Alleging that they will be denied more than $18 million by virtue of past or future distributions to the federal government and the States, the Claimants also sought an order prohibiting the DOE from disbursing any funds to governments and requiring the DOE to seek restitution of funds already disbursed. The DOE moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground the doctrine of issue preclusion barred the Claimants from re-litigating the matters in their complaint. In response, the Claimants moved for summary judgment.

The district court dismissed the complaint and denied the Claimants' motion for summary judgment, ruling that the complaint was barred by the issue preclusive effect of *Consolidated Edison Company of New York v. Abraham*, 2002 U.S. Dist. LEXIS 26907 (October 16, 2002) ("*ConEd IV*"), which it ruled had determined that the States and non-DOE federal entities were entitled to receive refunds from the Reserve Fund. *Consol. Edison Co. of N.Y. v. Abraham*, 2005 WL 736523, *6 (D.D.C. March 31, 2005). In the alternative, the district court ruled that the Claimants could not prevail on the merits of their complaint because the DOE's participation in the Settlement Agreement did not waive the rights of non-DOE federal agencies or the States to claim refunds from the Reserve Fund. *Id*. Upon the denial of their motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), the

Claimants filed simultaneous appeals in this court and the United States Court of Appeals for the Federal Circuit, successfully moving to stay the latter appeal until this court determined whether it has jurisdiction.

## II.

Section 5 of the EPAA incorporated the judicial-review provisions of section 211 of the ESA. *See* EPAA, Pub. L. No. 93-149, 87 Stat. 627, 633 (1973) (codified as amended at former 15 U.S.C. § 754 (1973)). Section 211 of the ESA placed exclusive jurisdiction over appeals from the district courts in "cases or controversies arising under" the ESA in the Temporary Emergency Court of Appeals ("TECA"). *See* Economic Stabilization Act Amendments of 1971, Pub. L. No. 92-210, § 211(a), 85 Stat. 743, 748-49 (1971). That court was dissolved by Congress and its jurisdiction over ESA issues was transferred to the Federal Circuit. *See* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 102, 106 Stat. 4506 (codified as amended at 12 U.S.C. § 1904 note and 28 U.S.C. § 1295(a)(11)). Consequently, because the Federal Circuit has exclusive jurisdiction over appeals "under section 211 of the [ESA]," 28 U.S.C. § 1295(a)(11), the DOE maintains the court must dismiss the instant appeal for lack of jurisdiction.

A court has jurisdiction to determine its jurisdiction, *Nestor v. Hershey*, 425 F.2d 504, 511 (D.C. Cir. 1969); *see also Atl. Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771, 778 (D.C. Cir. 1984), and the jurisdictional issue is a matter of law for this court to decide. *See Atl. Richfield Co.*, 769 F.2d at 778.

The question whether this court has jurisdiction to address the DOE's claim of issue preclusion is resolved by *Consolidated Edison Co. of N.Y. v. Ashcroft*, 286 F.3d 600, 603 (D.C. Cir. 2002) ("*Ashcroft*"). In that case, the court relied on the

interpretation of section 211 of the ESA by the Federal Circuit in *Texas American Oil Corp. v. United States Department of Energy*, 44 F.3d 1557 (Fed. Cir. 1995) (en banc). In *Texas American*, the Federal Circuit held that its jurisdiction under section 211 of the ESA is limited to "issue" jurisdiction, not "case" or "arising under" jurisdiction. *Id*. at 1564. Affirming the two-part test adopted by the TECA, the Federal Circuit held that an issue falls within its exclusive jurisdiction if "(1) resolution of the litigation must have required application or interpretation of the EPAA/ESA or its regulations, and (2) the EPAA/ESA issue must have been adjudicated in the district court." *Id*. at 1563-64*; see Ashcroft*, 286 F.3d at 603. The Federal Circuit reaffirmed this test in *Consolidated Edison Co. of New York v. Abraham*, 303 F.3d 1310, 1314-15 (Fed. Cir. 2002), and expressly disparaged, as dictum, a statement by the Tenth Circuit that any controversy involving the interpretation of the Settlement Agreement was within the exclusive jurisdiction of the Federal Circuit. *Id*. (citing *In re Dep't of Energy Stripper Well Litig.*, 206 F.3d 1345, 1350 (10th Cir. 2000)).

Analyzing whether a complaint is barred by the doctrine of issue preclusion does not involve "application or interpretation of the ESA/EPAA or its regulations," *Texas Am.*, 44 F.3d at 1563, and hence, "[t]he issue raised here fails the first element of the *Texas American* test." *Ashcroft*, 286 F.3d at 603. Rather, issue preclusion analysis requires comparing the issues actually litigated and determined in an earlier lawsuit with the issues that the Claimants seek to litigate in their complaint. By the same token, a court conducting an issue preclusion analysis does not review the merits of the determinations in the earlier litigation. *Cf. Fogg v. Ashcroft*, 254 F.3d 103, 111 (D.C. Cir. 2001). The issue preclusion analysis is thus "sufficiently separate" from a substantive determination under the ESA/EPAA that it lies within this court's jurisdiction. *See Ashcroft*, 286 F.3d at 603

(citing *Bray v. United States*, 423 U.S. 73, 75-76 (1975)).

### III.

Under the doctrine of issue preclusion, "binding effect [is to be given] to the first resolution of an issue.*" Fogg*, 254 F.3d at 110. "The law of collateral estoppel," of which issue preclusion is a part, *see Jack Faucett Assocs. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984), "is intended to protect the parties from the burden of relitigating the same issue following a final judgment and to promote judicial economy by preventing needless litigation." *Freeman United Coal Mining Co. v. Office of Workers' Comp. Program*, 20 F.3d 289, 294 (7ᵗʰ Cir. 1994). Its objective is "judicial finality." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Fogg,* 254 F.3d at 111 (internal quotation marks omitted) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1981)). In addition, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha,* 961 F.2d at 254. Each of these requirements is met here.

In *ConEd IV* the parties actually litigated the question of government claims to the Reserve Fund. The Claimants concede as much, noting that Claimants had argued that a State-owned utility, as a "party" to the Settlement Agreement, could not claim from the Reserve Fund, *see* Appellant's Br. at 33-34, and that Claimants had argued for government party ineligibility to the Reserve Fund, *see id*. at 37. If this issue was actually and necessarily decided, the prior decision would be conclusive and require dismissal of the Claimants' complaint, which seeks the

opposite result. Resolving that the question of government party ineligibility was "actually . . . determined" and was "necessarily determined" is clear upon reviewing the district court's opinion in *ConEd IV*.

*ConEd IV* involved the Claimants' challenge to the DOE's payment of funds from the Reserve Fund to the Puerto Rico Electric Power Authority ("PREPA"). The Claimants argued that "as a governmentally owned utility company, PREPA is disqualified from receiving any portion of the 20% of crude oil refunds reserved for individual claimants," and, "in the alternative, that even if PREPA is a qualified claimant, OHA failed to discharge its responsibility to investigate the particulars of PREPA's claims." *ConEd IV*, 2002 U.S. Dist. LEXIS 26907, at *6. In rejecting the first claim, the district court addressed the "variety of contextual arguments" made by Claimants, *id.* at *11, and found them to be unsupported by "law, regulatory decision, or provision of the settlement," *id.* at *12. The district court determined that if the parties to the Settlement Agreement had intended to waive their rights to recover from the Reserve Fund "they would have incorporated such a waiver as was incorporated in the waivers signed by the other [non-governmental] signatories to the [Settlement] [A]greement." *Id.* at *12 (internal quotation marks omitted). The district court then analyzed the "only textual support" for Claimants' argument, *id.* at *15, which consisted of two statements by the *Stripper Well* district court to the effect that the Reserve Fund was created to benefit "individuals" and "non-parties." *Id.* at *14 (citing *Stripper Well,* 653 F. Supp. at 114, 117). The district court determined that the mention of "non-parties" "does not specifically exclude reimbursement to party-owned entities" because, in approving the Settlement Agreement, the Kansas district court was "merely not[ing] that the [A]greement provides for reimbursement by entities not entering into the [S]ettlement [A]greement." *Id.* at *17-*19.

After disposing of the rest of the Claimants' arguments, the district court in *ConEd IV* concluded:

> In summary, [Claimants] have presented for the Court's review a number of theories in support of *their contention that government-owned utilities are not entitled to partake in Subpart V refunds. Their arguments lack legal, textual and factual support.* As such, this Court cannot conclude that Plaintiffs have presented more than a "scintilla of evidence" in support of their position.

*Id*. at *22-*23 (emphasis added).

The Claimants' suggestion that *ConEd IV* established only the rights of "'governmentally owned' 'utilities'" and not of "'governmental entities,'" Reply Br. at 13, is untenable. In *ConEd IV*, the district court rejected the Claimants' argument that the fact that the Settlement Agreement barred governmentally owned utilities from recovering from an escrow account created for non-governmental utility companies meant that the Settlement Agreement also barred governmentally owned utilities from recovering from the Reserve Fund. *ConEd IV,* 2002 U.S. Dist. LEXIS 26907, at *12. The district court reasoned that the government parties to the Settlement Agreement had signed no waiver of their rights to reimbursement from the Reserve Fund and that if these parties had intended to waive their rights to the Reserve Fund "they would have incorporated such a waiver as was incorporated in the waivers signed by the other [non-governmental] signatories to the [Settlement] [A]greement." *Id*. (internal quotation marks omitted). In other words, in *ConEd IV* the district court ruled that the Commonwealth of Puerto Rico, a party to the Settlement Agreement, did not *sub silentio* waive its right to claim from the Reserve Fund. Consistent with this conclusion, the district court allowed OHA to disburse Reserve Funds to PREPA. The

district court could not have done so if PREPA's state-owned status precluded recovery because Puerto Rico was barred from claiming from the Reserve Fund. The proposition that a non-DOE government party, or its owned entities, may claim from the Reserve Fund was therefore both actually determined and necessarily determined by *ConEd IV*.

Likewise, the Claimants' suggestion that the district court in *ConEd IV* did not resolve the rights of a "government party . . . which is claiming for itself, and not for individuals to whom it must pass on any recovered refunds," Reply Br. at 16, is a distinction having no support in *ConEd IV*. It is true that after noting that OHA was permitted to make refunds conditioned on the pass-through of the refunds to customers, the district court pointed out that OHA had exercised its discretion in approving PREPA's application and that by so doing OHA had ensured that "individuals" would receive the benefits of the refunded amounts. *ConEd IV*, 2002 U.S. Dist. LEXIS 26907, at *16-*17. But the district court determined that "the term 'individuals' is not defined in the [S]ettlement [A]greement," and there was "no indication" that the Kansas district court, which approved the Settlement Agreement, used that word to indicate its understanding that "Subpart V funds not set aside for the State or federal governments were precluded from being dis[bu]rsed to state-owned utilities as their government ownership denies them the ability to claim they are 'non-parties' or 'individuals.'" *Id*. at *15. Further, regarding the non-party issue, the district court stated in *ConEd IV* that the Settlement Agreement, as interpreted by the Kansas district court, "does not specifically exclude reimbursement to party-owned entities." *Id*. at *19. This statement again establishes that, as construed by the district court in *ConEd IV*, party-owned entities, such as other State and federal departments and agencies, may obtain reimbursement from the Reserve Fund. *Id*.

For these reasons, we conclude that the district court in *ConEd IV* actually addressed the issue posed by the Claimants here—whether States and non-DOE parts of the federal government, and their departments and agencies, are eligible to obtain reimbursement from the Reserve Fund—and necessarily resolved the question in a manner adverse to the Claimants. Because the other elements for a finding of issue preclusion are also met, and because the Claimants had "one fair and full opportunity to prove a claim and [have] failed in that effort," they may not re-litigate the claim a second time, *see Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324-25 (1971), and we affirm the dismissal of the complaint.