**PETERSBURG MUNICIPAL POWER & LIGHT, Petitioner**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 10–1096.

United States Court of Appeals, District of Columbia Circuit.

Feb. 25, 2011.

Sam Kalen, Michael A. Swiger, Julia Scarpino Wood, Van Ness Feldman, PC, Washington, DC, for Petitioner.

Jennifer Shepherd Amerkhail, Robert Harris Solomon, Esquire, Solicitor, Federal Energy Regulatory Commission (FERC) Office of The Solicitor, Washington, DC, for Respondent.

Before: GINSBURG and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

Upon consideration of the record from the Federal Energy Regulatory Commission and the briefs and oral arguments, it is

**ORDERED and ADJUDGED** that the petition be denied and the orders of the Federal Energy Regulatory Commission be affirmed.

On February 2, 2009, Petersburg Municipal Power & Light ("Petersburg"), the City of Angoon, Alaska, the City and Borough of Wrangell, Alaska, and Cascade Creek, LLC, each filed electronic applications with the Federal Energy Regulatory Commission after business hours for a preliminary permit to develop a hydroelectric power project at Ruth Lake in Southeastern Alaska. FERC regulations govern how the Commission determines which entity receives a preliminary permit when more than one applies:

(1) If both or neither of two applicants are either a municipality or a state, the Commission will favor the applicant whose plans are better adapted to develop, conserve, and utilize in the public interest the water resources of the region, taking into consideration the ability of each applicant to carry out its plans.

(2) If both of two applicants are either a municipality or a state, or neither of them is a municipality or a state, and the plans of the applicants are equally well adapted to develop, conserve, and utilize in the public interest the water resources of the region, taking into consideration the ability of each applicant to carry out its plans, the Commission will favor the applicant with the earliest application acceptance date.

(3) If one of two applicants is a municipality or a state, and the other is not, and the plans of the municipality or a state are at least as well adapted to develop, conserve, and utilize in the public interest the water resources of the region, the Commission will favor the municipality or state.

18 C.F.R. § 4.37(b). In addition, "[a]ny document received after regular business hours is considered filed on the next regular business day." 18 C.F.R. § 385.2001(a)(2). And this goes for electronic documents as well. See Electronic Filing of Documents, Order No. 619, 65 Fed.Reg. 57,088, 57,091 (Sept. 21, 2000); Filing via the Internet, Order No. 703, 72 Fed.Reg. 65,659, 65,664 (Nov. 23, 2007). Regular business hours are weekdays from 8:30 A.M. to 5:00 P.M. 18 C.F.R. § 375.101(c).

Presented with these four applications, FERC gave priority to the municipalities, found their plans equally well adapted, and because they had all filed after hours, determined their filing time as the following morning, February 3, 2009, at precisely 8:30 A.M. Faced with a tie in the race to file first, FERC instituted a tie-breaker—a lottery. Angoon won. Petitioner Petersburg argues that FERC's actions were arbitrary and capricious under 5 U.S.C. § 706(2)(A) because the agency ignored its regulations in awarding the permit, awarded the permit via a lottery not sanctioned by regulations, and failed to explain how a lottery could be fair given cooperation among some of the applicants. We disagree and affirm FERC's orders.

In awarding the preliminary permit, FERC acted in accordance with its regulations, as it has long interpreted them.

The Commission explained that none of the applicants had provided a plan based on "detailed studies," and that it followed its established understanding that under such circumstances there was no way to conclude that any plan was superior to the others. *City of Angoon, Alaska,* Order Issuing Preliminary Permit, Denying Competing Applications, and Granting Priority to File License Application, 129 FERC ¶ 62,101, PP 10, 20 (2009). See also *City of Angoon, Alaska,* Order Denying Rehearing, 130 FERC ¶ 61,219, P 12 (2010) (noting that FERC has consistently stated that without detailed studies, it cannot determine whether plans are better adapted, "except in unusual cases."). Indeed, on petition for rehearing, FERC noted explicitly that "all of the applicants propose almost identical projects." Order Denying Rehearing, 130 FERC ¶ 61,219, P 12. Petersburg argues that instead of creating a lottery, which is not explicitly provided for in FERC's regulations, FERC should have revisited its "detailed studies" practice and made a judgment as to which plan was best adapted or asked for more information in order to make such a judgment. But we cannot fault FERC for continuing to follow its longstanding practice solely because of a tie in the first-to-file race. As we explain below, using a lottery to break the tie was not so unreasonable as to mandate such a shift.

Petersburg also argues that FERC should have used the precise time of the electronic filings, rather than considering each after-hours application as filed at 8:30 AM the following day. But the Commission acted in accordance with its regulation on after-hours filing, explained the situation, and cited the relevant provision. Order Issuing Preliminary Permit, 129 FERC ¶ 62101, P 14 & n. 10; Order Denying Rehearing, 130 FERC ¶ 61,219, P 16 & n. 30.

With respect to the lottery, Petersburg argues that the creation of the lottery was not sanctioned by regulation and was therefore arbitrary and capricious, or in the alternative, that FERC failed to adequately explain why a lottery would be fair when there was evidence of some applicants' cooperation (in the form of filing substantially identical applications and admitted cooperation). In its notice announcing the lottery, FERC acknowledged the process applied only as a tie-breaker for identical filing times, see Notice Announcing Preliminary Permit Procedures, 128 FERC ¶ 61,077 (2009), and it later explained that its discretionary authority flowed from Section 309 of the Federal Power Act, 16 U.S.C. § 825h, which states that the Commission has the power to perform acts "necessary or appropriate" to carry out its obligations under the Act. See Order Issuing Preliminary Permit, 129 FERC ¶ 62,101, P 17; Order Denying Rehearing, 130 FERC ¶ 61,219, P 18–20. Given that there were three municipal applicants, that no applicant's plans were better adapted than the others, and that each filed at the same time, FERC had reached the end of its regulations. On its face, this solution does not appear to be an arbitrary way to fill the gap in its procedures that circumstances had created. Fortune's choice may have been arbitrary, but the use of a lottery need not be.

Petersburg argues that use of a lottery was unfair here because cooperation between Angoon and Wrangell "stack[ed] the deck" against it and that FERC did not explain why in such a case the lottery did not amount to "stuff[ing] the ballot box." FERC explained that Angoon and Wrangell had not filed as joint applicants and that only the applicant receiving the preliminary permit (here, Angoon) could reap the benefit of priority in filing a licensing permit. Order Issuing Preliminary Permit, 129 FERC ¶ 62,101, P 18. FERC

investigates allegations of secret agreements to share control of projects at the stage of licensing rather than that of issuing the preliminary permit, in order to conserve agency resources and expedite issuance of permits; deterrence at the preliminary permit stage is preserved because discovery of intent to share control will result in a denial of a license application. See *City of Bedford v. FERC*, 718 F.2d 1164, 1168–70 (D.C.Cir.1983). Even so, FERC acknowledged the possible risk of "site banking" given the "unprecedented" nature of the lottery and stated that it would be vigilant in monitoring Angoon's progress. Order Denying Rehearing, 130 FERC ¶ 61,219, P 23. Given that the applicants had no reason to anticipate a lottery, it appears that (even if there was some way in which they could *all* reap a benefit from the relatively high odds that *one* of them would win the lottery, which does not appear to be the case) none had any incentive to "stack the decks" in the way supposed by Petersburg. In some future situation, of course, the facts may be different, and if parties anticipating a lottery (now presumably a likely outcome in some circumstances) in fact had an incentive to skew it by agreement to file multiple similar applications, FERC may need to explain with greater rigor why a lottery would be fair. But this is not that situation, and FERC's actions and explanations were not arbitrary or capricious.

Pursuant to Rule 36 of this Court, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc*. See FED. R.APP. P. 41(b); D.C. CIR. R. 41.