# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 19, 2015      Decided November 20, 2015

No. 14-1153

WESTERN MINNESOTA MUNICIPAL POWER AGENCY, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Sam Kalen* argued the cause for petitioners. With him on the briefs were *Michael Swiger* and *John Clements*. *Randolph L. Elliott* and *Delia D. Patterson* entered appearances.

*Holly E. Cafer*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, General Counsel, and *Robert H. Solomon*, Solicitor. *Susanna Y. Chu*, Attorney, entered an appearance.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Western Minnesota Municipal Power Agency ("Western Minnesota") submitted an application pursuant to the Federal Power Act ("FPA") for a preliminary permit for a hydroelectric project in Polk County, Iowa. A private developer, FFP Qualified Hydro 14, LLC ("FFP"), also submitted a permit application for the same project on the same day. Despite Western Minnesota's status as a municipality, the Federal Energy Regulatory Commission concluded that the municipal preference under Section 7(a) of the FPA applies only to municipalities "located in the[] vicinity" of the water resources to be developed. *FFP Qualified Hydro 14, LLC, Order Issuing Successive Preliminary Permit, Granting Priority to File License Application, and Denying Competing Application* ("*Permit Order*"), 145 FERC ¶ 61,255, at ¶ 17 (Dec. 19, 2013). Based on a random drawing, the Commission awarded the permit to FFP and denied rehearing. Western Minnesota and intervenors petition for review on the principal ground that the Commission's geographic proximity test is an impermissible interpretation of the plain text of the statute. We agree that Congress has spoken directly to the question in defining "municipality" in Section 3(7) of the FPA, and we grant the petition.

**I.**

The Commission is authorized under Section 4 of the FPA to issue licenses for the construction, operation, and maintenance of hydroelectric projects on federal land or waters in a two-stage process: a preliminary permit and a license. 16 U.S.C. § 797. A preliminary permit gives the holder "priority of application" for a license and enables the holder "to secure the data and to perform the acts required" for a license application. *Id*. §§ 797(f), 798(a). Section 7(a) of the FPA provides that the Commission "shall give preference to" preliminary permit

applications of "States and municipalities." 16 U.S.C. § 800(a). A "municipality" is defined as "a city, county, irrigation district, drainage district, or other political subdivision or agency of a State competent under the laws thereof to carry on the business of developing, transmitting, utilizing, or distributing power." FPA § 3(7), 16 U.S.C. § 796(7).

The Commission has adopted several timing regulations of relevance here. Where the municipal preference does not apply because both or neither of the competing applicants are a state or municipality, and the plans of both are equally well adapted, "the Commission will favor the applicant with the earliest application acceptance date." 18 C.F.R. § 4.37(b)(2). Applications received after regular business hours are considered filed on the next regular business day. *Id.* § 385.2001(a)(2). Where two permit applications are deemed filed on the same date and at the same time, the Commission's longstanding practice has been to break the tie by means of a lottery. *See FFP Qualified Hydro 14, LLC*, *Order Granting Motion to Intervene Out-of-Time and Denying Rehearing*, 147 FERC ¶ 61,233, at ¶ 7 n.9 (2014) ("*Rehearing Order*") (citing *Petersburg Mun. Power & Light v. FERC*, 409 F. App'x 364, 366 (D.C. Cir. 2011)).

Between 5:00 p.m. on January 31, 2013 and 8:30 a.m. on February 1, 2013, the Commission received two applications for a preliminary permit to study the feasibility of a hydroelectric project at the Saylorville Dam and Lake in Polk County, Iowa: one from Western Minnesota and one from FFP. FFP is a private, non-municipal developer and holder of a prior preliminary permit for the Saylorville Dam site that expired on January 31, 2013. Western Minnesota is a municipal corporation and political subdivision of the State of Minnesota. Although Western Minnesota satisfied the definition of municipality under FPA § 3(7), the Commission announced its

intention to conduct a random drawing to determine which applicant would be considered to have filed first and be entitled to the permit. On the day of the drawing, Western Minnesota filed a motion arguing that the drawing was unnecessary because it was entitled to municipal preference. Nevertheless, the Commission held the drawing, which resulted in priority being granted to FFP.

On December 19, 2013, the Commission granted FFP a successive preliminary permit and priority to file a future license application and denied Western Minnesota's competing application. *Permit Order*, 145 FERC ¶ 61,255. Stating that Section 7(a) provided "no guidance as to the scope of the municipal preference," the Commission decided that "the best reading of the statute is that municipalities should be accorded preference only with respect to the development of water resources that are located in their vicinity." *Id.* at ¶ 17. More generally, the Commission observed that "it is difficult to discern what public interest is served by giving a municipality a preference with respect to a project that is far from the site of the municipality," and that "[t]o do so would effectively make municipalities super-competitors with respect to all new hydropower developments, regardless of their location." *Id.* Because Western Minnesota's headquarters in Ortonville, Minnesota are "almost 400 miles from" the Saylorville Dam in Iowa, and "the record reveals no connection, *beyond a business development interest*, between the proposed project and [Western Minnesota]," the Commission concluded that "granting municipal preference to Western Minnesota in these circumstances would not be in the public interest." *Id*. (emphasis added). As Western Minnesota was not entitled to a municipal preference and "there [was] no claim that either FFP's or Western Minnesota's plans is better adapted than the other," the Commission awarded the preliminary permit to FFP as a result of the random drawing. *Id*. ¶ 20.

Western Minnesota filed a request for rehearing on the ground that the Commission's interpretation of the municipal preference was contrary to the plain text of Section 7(a). Additionally, it argued that the Commission had impermissibly changed its longstanding interpretation of the provision and that its "in the vicinity" standard was too vague to be understood or applied. The American Public Power Association and the Public Power Council moved to intervene in support of Western Minnesota and also requested rehearing. The Commission granted the motion to intervene out of time but denied both requests for rehearing. *Rehearing Order* ¶ 1. Western Minnesota and intervenors (together, "Western Minnesota") petition for review of the Permit and Rehearing Orders.

## II.

The court reviews an agency's interpretation of a statute that it administers under the two-step framework of *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984). Under step one, the court must determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If so, then the court and the agency must "give effect to the unambiguously expressed intent of Congress." *Id*. at 842–43. If the court determines that "the statute is silent or ambiguous with respect to the specific issue," then under step two, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

In addressing a question of statutory interpretation, the court begins with the text. *See, e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist*., 541 U.S. 246, 252 (2004). Section 7(a) of the FPA provides:

> In issuing preliminary permits hereunder or original licenses where no preliminary permit has

> been issued, the Commission *shall give preference* to applications therefor by States and municipalities, provided the plans for the same are deemed by the Commission *equally well adapted*, or shall within a reasonable time to be fixed by the Commission be made equally well adapted, to conserve and utilize in the public interest the water resources of the region.

16 U.S.C. § 800(a) (emphasis added). As Western Minnesota points out, "[n]othing in this language qualifies or restricts which 'states' or which 'municipalities' are to be favored." Pet'rs' Br. 12–13. Congress determined that these entities shall be granted preference as long as their plans are determined by the Commission to be as "equally well adapted" to that of a competing non-municipal applicant. It defined the word "municipality" broadly, leaving no indication that geographic considerations are relevant to an applicant's status as a municipality. FPA § 3(7), 16 U.S.C. § 796(7). Further, nothing in the text of Section 7(a) suggests that Congress's use of the phrase "shall give preference" is anything other than a mandatory directive to the Commission. The ordinary meaning of "shall" is the opposite of "may," denoting the Commission's duty to prefer municipalities with at least equal plans, not an invitation for the Commission to determine when preferring a particular municipality would serve the public interest as the Commission sees it. *See Ass'n of Am. R.Rs. v. Costle*, 562 F.2d 1310, 1312 (D.C. Cir. 1977); BLACK'S LAW DICTIONARY 1379 (7th ed. 1990). Additionally, the plain text shows that Congress was specific about the public policy it intended to advance by Section 7(a): a municipality shall receive preference only where its plans are "equally well adapted . . . to conserve and utilize in the public interest the water resources of the region." 16 U.S.C. § 800(a). This precondition is not a limit on which entities are municipalities that qualify for the statutory preference but rather

describes the circumstances that must exist to trigger application of the preference.

By its terms, then, Section 7(a) is a "statutory tie-breaker provision favoring states and municipalities over private parties." *Oconto Falls v. FERC*, 41 F.3d 671, 672 (D.C. Cir. 1994). As defined in Section 3(7), "municipality" neither betrays ambiguity nor leaves a statutory gap for the Commission to fill. Contrary to the Commission's conclusion, Congress has spoken directly to the question at issue.

In concluding that Section 7(a) is ambiguous because it provided no guidance on its scope, the Commission has "manufactured ambiguity," "ignoring [*Chevron* step one] altogether by failing to articulate how the plain text of Section 7(a) was unclear." Pet'rs' Br. 11. The Commission never explained why the meaning of "States and municipalities" is ambiguous such that the municipal preference can be limited to those municipalities in a project's "vicinity," a word Congress did not use in defining "municipality" or elsewhere in Sections 4 or 7(a). Instead, the Commission declined to apply the municipal preference because of its policy conclusion that "it is difficult to discern what public interest is served by giving a municipality a preference with respect to a project that is far from the site of the municipality." *See Permit Order* ¶ 17. In the Commission's view, if any municipality "could legitimately claim preference," a "distant municipality" in competition with a "nearby municipality" could "win a tie breaking drawing and then deprive the nearby municipality of the right to utilize a local water resource." *Id*. Rather than inferring from Congress's silence that the physical proximity of a municipality to a project is irrelevant to whether it is a "municipality" for purposes of the Section 7(a) preference, the Commission inferred a legislative delegation to pick and choose favored municipalities to advance the Commission's policy.

Agencies are empowered to make policy only insofar as Congress expressly or impliedly delegates that power. *See Utility Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2445 (2014). "Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Ethyl Corp. v. EPA*, 51 F.3d 1053, 1060 (D.C. Cir. 1995) (emphasis in original). The Commission's apparent understanding that "*Chevron* step two is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power . . . , is both flatly unfaithful to the principles of administrative law . . . and refuted by precedent." *Id*. (alteration in original). In Section 7(a), Congress adopted a clear mandate that where applications are "equally well adapted," the application of a "municipality" is to be preferred over that of a private applicant. Bolstering this mandate is the broad definition of "municipality." The Commission's injection of a proximity requirement in the definition of "municipality" is unwarranted. By stating that the preference applies only when competing applicants' plans are "equally well adapted" to develop and conserve the "water resources of the region," Congress identified a single qualification on application of the preference in favor of a "municipality."

Nothing in the structure of the FPA reveals a contrary intent. The Commission relies on Section 4(f) of the FPA, which requires the Commission to give notice of an application for a preliminary permit (1) "to any State or municipality likely to be interested in or affected by such application," and (2) by publication in a daily or weekly newspaper published in the county or counties where the project is situated. 16 U.S.C. § 797(f). The Commission has interpreted Section 4(f) to set geographic criteria for identifying which political subdivisions

must be notified of a permit application. *See* 18 C.F.R. § 4.32(a)(2). Noting the distinction in Section 4(f) between municipalities in general and those "likely to be interested in" a potential project, the Commission stated that "it would be administratively impossible for the Commission to determine which municipalities were likely to be interested" in a project "other than on the basis of propinquity." *Permit Order* ¶ 18. Because Section 4(f) "does not extend the same treatment to all municipalities," the Commission concluded it could also distinguish between municipalities on the basis of proximity for purposes of applying the Section 7(a) preference. *Id.* Relying on its view of the undesirability of far-away municipalities developing local water resources, the Commission declined to grant Western Minnesota a municipal preference because Western Minnesota's headquarters are almost 400 miles from the project site and Western had only "a business development interest" in the proposed project. *Permit Order* ¶ 19.

Although the Commission's premise that Section 7(a) must be read in light of its broader statutory context may be unobjectionable, *see, e.g.*, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000), its analysis has veered off course. Section 4(f) is a notice provision, not a substantive restriction on the municipal preference in Section 7(a). The Commission is not faced with two statutory provisions having differing mandates, creating a "fundamental ambiguity" that would warrant application of the Commission's expertise. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007). Nor is there an inconsistency from the plain text of these provisions that a municipality eligible for the Section 7(a) preference may not be entitled to receive Section 4(f) notice.

On rehearing, the Commission suggested that the clause limiting notice to those "State[s] or municipalit[ies] *likely to be*

*interested in or affected by* such application," 16 U.S.C. § 797(f) (emphasis added), would be "superfluous" if Congress intended "to extend municipal preference to all municipalities without exception," *Rehearing Order* ¶ 21. This argument fails on several grounds. First, by its plain terms, the clause informs the Commission which group of municipalities must be notified of an application, not which municipalities the Commission must prefer under Section 7(a). Consistent with the Commission's observation about administrative feasibility, *see Permit Order* ¶ 18, the clause sets a manageable limit on the Commission's notice obligations. Second, interpreting Section 4(f)'s procedural requirements as a substantive limit on the scope of Section 7(a) ignores the connector "or". Section 4(f) requires the Commission to give notice of a preliminary permit application "to any State or municipality likely to be interested in *or* affected by such application." 16 U.S.C. § 797(f) (emphasis added). Municipalities "in the vicinity of" a project site are likely to be "affected by" the application whereas here Western Minnesota has stated its "interest[]" in the Saylorville Dam project. That interest is therefore established and more than just "likely." Even if Section 4(f) were viewed as in some way qualifying the scope of the municipal preference in Section 7(a), Western Minnesota qualifies by its clear "interest" in the project.

The Commission's reliance on *Northern Colorado Water Conservancy District v. FERC*, 730 F.2d 1509 (D.C. Cir. 1984), as support for interpreting Section 4(f) as a limit on the scope of Section 7(a) is misplaced. That case did not discuss whether the two provisions should be read together. In *Northern Colorado*, the Commission had failed to provide written notice of a preliminary permit application to the Water Conservancy District even though the District was a "municipality" under FPA § 3(7) and "likely to be interested in or affected by" the application under Section 4(f) because the District distributed

water from the canal at the project site. *See id*. at 1516. In granting the District's petition to reopen the preliminary permit application process, the court stated that Section 4(f)'s notice requirement "was designed to assist municipalities in their competition for permits" and "was primarily intended to allow states and municipalities to assert and thus protect their statutory preferences." *Id*. at 1512, 1513. The court also "reject[ed] any argument that 'municipality' has a different meaning for purposes of a § 4(f) notice than for purposes of a § 7(a) municipal preference." *Id.* at 1516 n.7. Citing this footnote as support for a proximity limit on the scope of the municipal preference, the Commission maintains that its approach ensures a consistent interpretation of the word municipalities in Sections 4(f) and 7(a). *See* Resp. Br. at 26. This overlooks that the meaning of "municipality" is the same for both Sections 4(f) and 7(a). Rather, the relevant difference between municipalities to be notified and municipalities entitled to the municipal preference arises from the absence in Section 7(a) of the limiting clause in Section 4(f) — "affected by or likely to be interested in" — that cabins the Commission's notice obligations. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation omitted). Nothing in the plain text of Sections 4(f) or 7(a) rebuts this presumption.

The Commission's resort on rehearing to legislative history is also unavailing. The Commission points out that Section 7(a) was "originally enacted in the Federal Water Power Act of 1920, when the nation's electric grid was relatively undeveloped and access to hydroelectric power was at a particular premium for municipalities seeking to provide electric power to their communities." *Rehearing Order* ¶ 24.

But even if Congress did not envision the magnitude of current long-distance transmission, it was aware transmission capacity would grow.[1]  Nonetheless, relying on legislative history, the Commission concluded that "Congress intended only to give a preference to states and municipalities with respect to water resources in proximity to those public entities, to facilitate the development of those resources for the benefit of local consumers." *Rehearing Order* ¶ 24.  Yet the legislative history, by the Commission's own admission, is "limited," *id*., and it is inconclusive on the question whether the municipal preference was intended to preserve local municipalities' control over water resources or to encourage public rather than private ownership.[2]  On the other hand, the legislative history would

---

[1]  For instance, the House Committee on Public Lands heard testimony that "the site of the water plant is not likely to be its field of operation; its power is distributed over a large area."  Hearings Before the House Comm. on Public Lands, 63rd Cong. 328 (1914) (statement of George Otis Smith, U.S. Geological Survey, Dep't of Interior).  Similarly, O.C. Merrill, "the chief draftsman of the Federal Water Power Act," *see Allegheny Elec. Coop., Inc.*, 26 FERC ¶ 61,119, at 61,296 (1984), testified that "a very considerable increase in the output of electric energy could be secured by the combination of existing isolated plants into a single system through the medium of high-tension transmission lines."  Hearings Before the House Comm. on Water Power, 65th Cong. 19–20 (1918) (statement of O.C. Merrill, Forest Service, Dep't of Agriculture).

[2]  Some of the legislative history suggests Congress's primary concern was local development of resources.  For instance, one Senator stated a "very strong[] . . . opinion that the States and the counties, municipalities, and other subdivisions . . . in which these water-power sites are situated should have the right to develop them for the use of the people of those States, counties, or municipalities, as the case may be."  Statement of Sen. Nugent, 59 Cong. Rec. 1571 (1920).  Other parts suggest Congress was concerned with protecting public over private ownership.  For instance, another Senator

suggest that Congress did not intend for the Commission to have discretion in picking among states and municipalities, contrary to the Commission's approach here.[3]  In short, the legislative history cannot save the Commission's interpretation from the plain statutory text.

On rehearing the Commission also purported to invoke the absurdity doctrine, stating Section 7(a) was ambiguous because applying the municipal preference to all municipalities regardless of geographic proximity would work an "absurd or mischievous" result and would "thwart the statute's manifest purpose."  *Rehearing Order* ¶ 20.  It again referenced hypothetical examples of an East Coast municipal entity claiming preference to develop a project in Hawaii, and a competition between a distant and a nearby municipality where a tiebreaker drawing results in depriving the nearby

---

emphasized that the statute would "look[] with favor upon" hydroelectric plants operated by municipalities, because "[w]herever the interests of the public are best served by it, I think it is just as well and better to give it to the municipality than it would be to give it to private individuals to do the same thing."  Statement of Sen. LaFollette, 56 Cong. Rec. 9113 (1918).

[3]  An early version of the bill that would become the FPA provided that "in issuing preliminary permits or licenses hereunder the commission may *in its discretion* give preference to applications therefor by States and municipalities."  56 Cong. Rec. 9775 (1918).  The House of Representatives adopted an amendment striking the phrase "may in its discretion" and replacing it with the word "shall."  *Id*. at 9805.  The sponsor of this amendment stated its "sole purpose" was "to place States, municipalities, and other political subdivisions upon an equality with private applicants" by "mak[ing] it mandatory upon the commission to grant the license to the State or municipality, if the plans submitted by it are . . . as good as those submitted by the private applicant."  *Id*. at 9804 (statement of Rep. Doremus).

municipality of the right to utilize a local water resource. *Id*.; *see Permit Order* ¶ 17. In the Commission's view, "these types of consequences were not likely intended, or anticipated, by Congress in enacting FPA section 7(a)" in 1920. *Rehearing Order* ¶ 20. The statutory issue for the court, however, is not whether the Commission's interpretation of Section 7(a)'s municipal preference is the better public policy. Before the Commission can invoke the doctrine of "absurd or mischievous consequences" to rewrite the statute, it must demonstrate that the plain meaning of the statutory text "'defies rationality' by 'render[ing] a statute nonsensical [and] superfluous.'" *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (quoting *Landstar Express Am., Inc. v. Fed. Maritime Comm'n*, 569 F.3d 493, 498–99 (D.C. Cir. 2009). The Commission has not met this high threshold. There is nothing patently unreasonable in favoring any and all municipalities over private applicants when "'the chief purpose'" of the FPA was "to 'provide conditions under which capital can be secured [to develop hydropower] while at the same time fully to protect the paramount interests of the public in its last great national resource.'" *Clark-Cowlitz Joint Operating Agency v. FERC*, 775 F.2d 366, 377 (D.C. Cir. 1985), *vacated and reh'g en banc granted*, 787 F.2d 674 (1986) (quoting O.C. Merrill, *Benefits Accruing to Municipalities Through the Federal Water Power Act*, THE AMERICAN CITY, Vol. XXIII, No. 5 (Nov. 1920)). Even when Congress limited the municipal preference in 1986 to "original" as distinct from relicensing proceedings, when it would have been aware of modern long-distance transmission, it did not add a proximity requirement. *See Oconto Falls*, 41 F.3d. at 672 (citing the Electric Consumers Protection Act, Pub. L. No. 99-495, 100 Stat. 1246 (1986) (codified at 16 U.S.C. §§ 791a–828c)).

To the extent the Commission is concerned that granting a preference to a too-distant municipality seeking a preliminary permit could have "undesirable consequences," *Rehearing Order* ¶ 20, the Commission may be able to address it through the "equally well adapted" provision of Section 7(a), *cf. id.* ¶ 20 n.25. That could permit a local municipality (or local private entity) to triumph over a distant municipality, without limiting the statutory definition of "municipality." The nature and extent of the Commission's concern is unclear, however. The Commission has rejected a proximity "test" for well-adaptedness, *see, e.g., N.E.W. Hydro, Inc. City of Oconto Falls, Wis.*, 85 FERC ¶ 61,222, 61,909 & n.12 (1998), and reported that "many licensees are headquartered a distance from their projects, to no ill effect," *id*. at 61,909. Of course, the propriety of using the "equally well adapted" requirement to impose some geographic constraints is not a question before the court and would involve a *Chevron* step two analysis. The Commission's approach here, by contrast, that there is some geographical limit *inherent* to what is a "municipality" for purposes of Section 7(a), fails at *Chevron* step one.

Accordingly, we grant the petition for review, vacate the Commission's Permit Order and Rehearing Order, and remand for further proceedings without reaching Western Minnesota's other challenges.