# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued En Banc January 27, 2005        Decided  May 10, 2005

No. 02-5354

IN RE: RICHARD B. CHENEY, VICE PRESIDENT OF THE
UNITED STATES, ET AL.,
PETITIONERS

———

Consolidated with Nos.
02-5355 & 02-5356

———

On Petition for Writ of Mandamus and
Appeals from the United States District Court
for the District of Columbia
(01cv01530)
(02cv00631)

———

*Paul D. Clement*, Acting Solicitor General, U.S. Department of Justice, argued the cause for petitioners.  With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, United States Attorney, *Edwin S. Kneedler*, Deputy Solicitor General, *Gregory G. Katsas*, Deputy Assistant Attorney General, *David B. Salmons* and *Douglas Hallward-Driemeier*, Assistants to the Solicitor General, and *Mark B. Stern, Thomas M. Bondy*, and *Michael S. Raab*, Attorneys.  *Eric D. Miller*, Attorney, and Shannon W. Coffin entered appearances.

2

*Sanjay Narayan* and *Paul J. Orfanedes* argued the cause for respondents Sierra Club and Judicial Watch, Inc. With them on the brief were *Alex Levinson, David Bookbinder, Roger Adelman*, and *James F. Peterson*.

*David Overlook Stewart*, *Thomas M. Susman*, and *Stacy J. Dawson* were on the brief of *amici curiae* American Association for Law Libraries, *et al.* in support of respondents.

Before: GINSBURG, *Chief Judge*, and EDWARDS, SENTELLE, RANDOLPH, ROGERS, TATEL, GARLAND, and ROBERTS, *Circuit Judges*.

Opinion for the Court En Banc filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The Supreme Court vacated our decision in *In re Cheney*, 334 F.3d 1096 (D.C. Cir. 2003), and remanded the case for reconsideration of the government's petition for a writ of mandamus. *Cheney v. U.S. Dist. Court*, 124 S. Ct. 2576 (2004). We granted the government's motion to rehear the case *en banc*. The Supreme Court's opinion, and our opinion, lay out the history of these proceedings in considerable detail. We will assume familiarity with both opinions and state only the essentials. The ultimate issue is whether this court should issue a writ of mandamus ordering the district court to dismiss the case.

I.

On January 29, 2001, President George W. Bush issued a memorandum establishing the National Energy Policy Development Group (NEPDG) within the Executive Office of the President for the purpose of developing a "national energy policy designed to help the private sector, and government at all

levels, promote dependable, affordable, and environmentally sound production and distribution of energy for the future." The President named Vice President Cheney chairman and assigned cabinet secretaries and other federal officials to serve with the Vice President. Five months later, the NEPDG issued its final report to the President. As the President directed, the NEPDG ceased to exist as of "the end of fiscal year 2001," that is, September 30, 2001.

Judicial Watch and the Sierra Club filed actions, later consolidated, seeking NEPDG documents on the ground that the group was an "advisory committee" within the meaning of the Federal Advisory Committee Act, or FACA, 5 U.S.C. App. § 3. "'[A]dvisory committee' means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof" "established or utilized by the President" or an agency for the purpose "of obtaining advice." *Id.* § 3(2). Exempted from FACA are groups "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government." *Id.* Subject to the Freedom of Information Act, 5 U.S.C. § 552, each FACA advisory committee must make publicly available its "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the committee. 5 U.S.C. App. § 10(b).

The only individuals the President named to the NEPDG were federal officials; only federal officials signed the final report. To avoid the exemption in § 3(2) of FACA, Judicial Watch alleged, on information and belief, that non-federal employees "fully participated in non-public meetings of the NEPDG as if they were members of the NEPDG, and, in fact, were members of the NEPDG." Judicial Watch Compl. ¶ 25. Sierra Club's allegations were somewhat different. It claimed

that the NEPDG and "Task Force Sub-Groups were not composed wholly of full time officers or employees of the federal government," apparently because "[e]nergy industry executives, including multiple representatives of single energy companies, and other non-federal employees, attended meetings and participated in activities of [the NEPDG] and Task Force Sub-Groups." Sierra Club Compl. ¶ 19. These "Task Force Sub-Groups," the Sierra Club alleged, became FACA advisory committees when federal officials "participated in and exercised responsibility over meetings and other activities involving groups of energy industry executives and other non-federal employees, for the purpose of obtaining advice and recommendations on the Administration's national energy policy." *Id.* ¶ 18. As the Supreme Court noted, both Judicial Watch and the Sierra Club relied on *Association of American Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898 (D.C. Cir. 1993) ("*AAPS*"), to "contend that the regular participation of the non-Government individuals made them *de facto* members of the committee." *Cheney v. U.S. Dist. Court*, 124 S. Ct. at 2583.

The complaints invoked the Administrative Procedure Act, 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361, and named as defendants the Vice President, the NEPDG, and the federal officials who served on the NEPDG. The Judicial Watch complaint also listed as defendants alleged *de facto* non-federal members of the Group. Plaintiffs sought a declaratory judgment and an injunction requiring the production of all materials subject to disclosure under FACA.

The government moved to dismiss, arguing, among other things, that FACA did not create a cause of action and that application of FACA to the NEPDG would infringe upon the President's constitutional authority to recommend legislation to Congress and to require opinions from department heads. The district court agreed that FACA did not create a private cause of

action and dismissed Judicial Watch's claims against the non-federal defendants. *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 34 (D.D.C. 2002). The court also dismissed the claims against the NEPDG because it no longer existed. *Id.* at 35. But the court refused to dismiss the mandamus actions against the Vice President. *Id.* at 44.[1] While acknowledging the force of the government's separation-of-powers argument, the court thought it should withhold decision on the constitutional question until further factual development. *Id.* at 54. The court then approved the plaintiffs' discovery plan. The government moved for a protective order, arguing that discovery against the Vice President would itself violate the separation of powers. With its motion, the government submitted an affidavit from the Deputy Assistant to the Vice President for Domestic Policy. On behalf of the Vice President, the government also moved for leave to file a motion for summary judgment. The court denied the government's motion for a protective order and refused to certify an appeal pursuant to 28 U.S.C. § 1292(b).

On the government's petition for a writ of mandamus against the district court, under the All Writs Act, 28 U.S.C. § 1651, a divided panel of this court held that although plaintiffs' discovery request was overly broad, the government had an alternative method of protecting itself because it could invoke executive privilege to prevent discovery. *In re Cheney*,

---

[1] The court granted the government's motion to dismiss the APA claims against the Vice President but refused to rule on the APA claims against those federal defendants who headed agencies. 219 F. Supp. 2d at 39-40. In the meantime, as Judicial Watch and the Sierra Club now concede, the agency heads complied with the discovery orders the government challenges in its mandamus petition in this court. Brief for Sierra Club and Judicial Watch at 4. The APA is therefore no longer part of this case.

334 F.3d at 1105-06. The court therefore dismissed the government's petition. *Id.* at 1109. In so ruling, the court stated that if "limited discovery" revealed "some degree of participation by non-federal personnel, then the district court will have to decide whether that participation amounts to de facto membership" under *AAPS*. *Id.* at 1108.

The Supreme Court agreed that the discovery plan, approved by the district court, was "overly broad," 124 S. Ct. at 2590, and "unbounded in scope," *id.* at 2591, seeking "everything under the sky," *id.* at 2590. But the Court ruled that this court had "prematurely terminated its inquiry" into whether a writ of mandamus should issue, and had done so "without even reaching the weighty separation-of-powers objections raised in the case," and without exercising "discretion" to decide if the writ is appropriate. *Id.* at 2593. The Court therefore vacated the judgment and remanded the case, stating that this court "should be sensitive to requests by the Government for interlocutory appeals to reexamine, for example, whether the statute embodies the *de facto* membership doctrine" of *AAPS*. *Id.*

## II.

In considering FACA's application to a committee within the Executive Office of the President, we must keep in mind that the statute does considerably more than require each "advisory committee" to disclose publicly documents that would otherwise remain confidential. Advisory committees must also file a charter; announce their upcoming meetings in the Federal Register; hold their meetings in public; and keep detailed minutes of each meeting. 5 U.S.C. App. § 9(c); §§ 10(a)(1), (2), (b) & (c); § 11. In addition, each such committee must "be fairly balanced in terms of the points of view represented" and may "not be inappropriately influenced by the appointing authority or by any special interest." *Id*. §§ 5(b)(2), (3) & (c).

Although we do not reach the question whether applying FACA to Presidential committees such as the NEPDG would be constitutional, separation-of-powers considerations have an important bearing on the proper interpretation of the statute, *see Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989), and on the district court's mandamus jurisdiction. "[S]pecial considerations control when the Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Cheney v. U.S. Dist. Court*, 124 S. Ct. at 2589.

As to FACA, the critical question is whether plaintiffs have carried their burden of showing that the NEPDG or its so-called "Sub-Groups" were "advisory committees," that is, committees who were advising the President but were not "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government," 5 U.S.C. App. § 3(2). While it is often easy to determine who is and who is not a federal employee, the question this lawsuit raises is different. Application of FACA depends on who is a member of a committee and who is not. On that subject, FACA is silent.

In light of the severe separation-of-powers problems in applying FACA on the basis that private parties participated in, or influenced, or were otherwise involved with a committee in the Executive Office of the President, we must construe the statute strictly. We therefore hold that such a committee is composed wholly of federal officials if the President has given no one other than a federal official a vote in or, if the committee acts by consensus, a veto over the committee's decisions.

Congress could not have meant that participation in committee meetings or activities, even influential participation, would be enough to make someone a member of the committee. When congressional committees hold hearings, it is

commonplace for the Senate or House members of the committee to bring aides with them. The same is true when high-ranking Executive Branch officials serving on committees attend committee meetings. They, too, commonly bring aides with them. An aide might exert great influence, but no one would say that the aide was, therefore, a member of the committee. The situation is comparable if an individual, not employed by the federal government, attends meetings or participates in the activities of a Presidential committee whose official membership consists only of federal officials. The outsider might make an important presentation, he might be persuasive, the information he provides might affect the committee's judgment. But having neither a vote nor a veto over the advice the committee renders to the President, he is no more a member of the committee than the aides who accompany Congressmen or cabinet officers to committee meetings.

Separation-of-powers concerns strongly support this interpretation of FACA. In making decisions on personnel and policy, and in formulating legislative proposals, the President must be free to seek confidential information from many sources, both inside the government and outside. *See* U.S. CONST. art. II, § 1, cl.1; § 2, cls. 1 & 2; § 3; *see Public Citizen*, 491 U.S. at 466-67 (Kennedy, J., concurring in the judgment, joined by Rehnquist, C.J., and O'Connor, J.); *id.* at 488. If the President considers appointing a committee to advise him on a policy matter, as he did in this case, he has two options. He may choose to form a FACA committee by appointing some of its members from outside the federal government. Or he may choose to form a committee composed only of federal employees and thus exempt from FACA. By following the latter course, the President can easily create an advisory body whose internal communications will remain confidential, so long as the right to vote or veto is not later extended to a non-federal employee.

III.

With this interpretation of FACA in mind we turn to plaintiffs' actions for mandamus-type relief. We put the matter in these terms because it is not technically accurate to speak of their actions as petitions for a writ of mandamus. Rule 81(b) of the Federal Rules of Civil Procedure long ago abolished the writ of mandamus in the district courts (although not in the appellate courts). But the Rule permitted "[r]elief heretofore available by mandamus" to be obtained by actions brought in compliance with the rules. FED. R. CIV. P. 81(b). "The principles that governed the former writ now govern attempts to secure similar relief," such as a mandatory injunction ordering a government employee or agency to perform a duty owed to the plaintiff. *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 n.7 (D.C. Cir. 1985) (Scalia, J.); *see* HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 941-42 (5th ed. 2003). Thus, the Mandamus Act, on which plaintiffs relied, confers jurisdiction on the district courts over actions "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

Jurisdiction over actions "in the nature of mandamus" under § 1361, like jurisdiction over the now-abolished petitions for writs of mandamus, is strictly confined. As the original panel in this case rightly pointed out, mandamus is "drastic"; it is available only in "extraordinary situations"; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a "clear and indisputable" right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary. *See* 334 F.3d at 1101-02. Although the panel was speaking of this court's mandamus jurisdiction under the All Writs Act, the Supreme Court held

that the district court's "analysis of whether mandamus relief is appropriate should itself be constrained" by the same principles. *Cheney v. U.S. Dist. Court*, 124 S. Ct. at 2593; *see Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

We held in *13th Regional Corp. v. Dep't of the Interior*, 654 F.2d 758 (D.C. Cir. 1980), that the word "duty" in § 1361 must be narrowly defined, and that a plaintiff's legal grounds supporting the government's duty to him must "be clear and compelling." *Id.* at 760. This does not mean that mandamus actions are ruled out whenever the statute allegedly creating the duty is ambiguous. *Id.* The district court still must interpret the underlying statute, as must we. But if there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action. To this extent, mandamus jurisdiction under § 1361 merges with the merits.

Neither Judicial Watch nor the Sierra Club explicitly claimed that any non-federal individual had a vote on the NEPDG or had a veto over its decisions. Sierra Club Compl. ¶ 18. Judicial Watch did state, on information and belief, that individuals not employed by the federal government "fully participated in non-public meetings of the NEPDG as if they were members of the NEPDG, and, in fact, were members of the NEPDG." Judicial Watch Compl. ¶ 25. It is perhaps possible to view this portion of the complaint as alleging that non-federal employees had the right to vote on, or to veto, NEPDG decisions during its meetings. But such allegations are belied by the statement of Andrew Lundquist, Executive Director of the NEPDG, which Judicial Watch attached to its complaint. In determining whether to dismiss, courts treat documents attached to a complaint as if they are part of the complaint. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). Lundquist's statement, dated May 4, 2001, answered inquiries from the ranking minority members of two committees

of the House of Representatives. In response to a question asking for a list of the members of the NEPDG, Lundquist named the Vice President, seven cabinet members, and several other federal officers. He stated that no non-federal employees served as members or staff of the NEPDG. He also stated that the NEPDG's meetings were held in January, February, March, April, and May, and that the meetings consisted only of federal officers. And there is nothing to indicate that non-federal employees had a right to vote on committee matters or exercise a veto over committee proposals. Therefore, the NEPDG was not a FACA advisory committee. It follows that the government owed the plaintiffs no duty, let alone a clear and indisputable or compelling one.

That neither Sierra Club nor Judicial Watch had a clear right to have the government perform a duty owed to them became even more apparent in view of the sworn declaration of Karen Knutson, filed by the government with the district court in September 2002. *See* FED. R. CIV. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). At the time of her declaration, and during the existence of the NEPDG, Knutson served as the Deputy Assistant to the Vice President for Domestic Policy. The Knutson declaration, based on personal knowledge, further confirmed that attendance at NEPDG meetings was "strictly limited" to federal officers and one federal employee of the officer's department. At another point, the declaration emphasized that no outsiders participated in any NEPDG meetings.[2]

---

[2] A Report of the Government Accounting Office in 2003, on which plaintiffs rely, also reported the statements of the federal officials who attended NEPDG meetings that attendance was limited to federal officers and employees. GAO, *Energy Task Force: Process Used to*

Plaintiffs also contended that so-called "Task Force Sub-Groups" were FACA advisory committees. Judicial Watch Compl. ¶ 53; Sierra Club Compl. ¶¶ 18-19. FACA defines "advisory committee" to include not only committees and other such groups, but also "any subcommittee or other subgroup thereof." 5 U.S.C. App. § 3(2). President Bush, in his directive establishing the NEPDG, gave the Vice President the authority to set up "subordinate working groups," but the Vice President never exercised this authority. *See* Decl. of Karen Knutson ¶ 11, Sept. 3, 2002. Judicial Watch admits as much. Its complaint stated that the subgroups it had in mind were established "without specific authorization" of the President. Judicial Watch Compl. ¶ 54f. While the complaints alleged that persons other than federal officials participated in the work of subgroups, *e.g.*, Sierra Club Compl. ¶¶ 18-19, other allegations indicate that plaintiffs were referring to the NEPDG's staff's "so-called 'stakeholder meetings'" with non-governmental parties, Judicial Watch Compl. ¶ 30. There is no allegation, however, that any supposed subgroup made an official decision, much less that anyone other than a federal official had a vote in or veto over such a decision. Indeed, the Lundquist statement attached to Judicial Watch's complaint made this clear by noting that federal employees on the NEPDG support staff "have met with many individuals who are not Federal employees to gather information relevant to the Group's work, but such meetings do not involve deliberations or any effort to achieve consensus on advice or recommendations. These meetings by the Group's staff were simply forums to collect individual views rather than to bring a collective judgment to bear." Responses of Andrew Lundquist at 2, May 4, 2001. If the NEPDG staff's "stakeholder

*Develop the National Energy Policy* 9 (Aug. 2003). The GAO examined the method by which the NEPDG developed its final report and sought to determine the costs associated with formulating the report. *Id*. at 1.

meetings" involved no "effort to achieve consensus" or "collective judgment," then clearly no non-government participants in those meetings exercised any vote or veto. Reinforcing this conclusion, the Knutson affidavit reported that no one other than federal officials "attended or participated in any meetings of the NEPDG or the Staff Working Group." The "Task Force Sub-Groups" were therefore not FACA committees.

\* \* \*

For all of these reasons we hold that plaintiffs have failed to establish any duty, let alone a clear and indisputable duty, owed to them by the federal government under FACA. We shall therefore issue a writ of mandamus pursuant to 28 U.S.C. § 1651 directing the district court to dismiss the complaints.

*So ordered.*