# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 11, 2019   Decided February 11, 2020

No. 19-5199

JEFFREY A. LOVITKY,
APPELLANT

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT
OF THE UNITED STATES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01454)

*Jeffrey A. Lovitky*, *pro se*, argued the cause and filed the briefs for appellant.

*Matthew J. Glover*, Counsel to the Assistant Attorney General, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Mark B. Stern*, Appellate Litigation Counsel, and *Christopher A. Bates*, Counsel to the Assistant General Counsel.

Before: ROGERS and MILLETT, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Ethics in Government Act requires public officials, including the President, to disclose certain personal financial information. Jeffrey Lovitky is an attorney who alleges that President Trump has obscured those required disclosures by commingling his personal liabilities with debts owed by entities he controls, thereby depriving Lovitky of information to which he is entitled and needs to make informed voting decisions in the 2020 presidential primary and general elections. The court affirms the dismissal of Lovitky's lawsuit because he has not shown that he has a clear and indisputable right to mandamus-type relief.

**I.**

Congress enacted the Ethics in Government Act of 1978 ("Ethics Act"), 5 U.S.C. app. 4, to "increase public confidence in the federal government, demonstrate the integrity of government officials, deter conflicts of interest, deter unscrupulous persons from entering public service, and enhance the ability of the citizenry to judge the performance of public officials." *United States v. Oakar*, 111 F.3d 146, 148 (D.C. Cir. 1997) (citing S. REP. NO. 95-170, at 21–22 (1978)). To that end, the Ethics Act requires specified government officials and candidates for public office to periodically disclose information such as their income, gifts received, property interests, liabilities, real estate and securities transactions, positions held, and the value of a qualified blind trust. *See* 5 U.S.C. app. 4 §§ 101–103.

The President must file a financial disclosure report with the Director of the Office of Government Ethics ("OGE") by May 15 of each year. *Id.* §§ 101(d), 101(f)(1), 103(b). The President is required to make "a full and complete statement

with respect to," among other information, the "identity and category of value of the total liabilities owed to any creditor . . . which exceed $10,000 at any time during the preceding calendar year." *Id.* § 102(a). The President must also disclose liabilities owed by the President's spouse or dependent children. *Id.* § 102(e)(1)(E). But the President need not report liabilities owed to immediate family members, certain loans secured by personal property, or certain revolving charge account liabilities. *Id.* § 102(a)(4).

Regulations implementing the Ethics Act mandate that "each financial disclosure report . . . must identify and include a brief description of the filer's liabilities exceeding $10,000 owed to any creditor at any time during the reporting period, and the name of the creditors to whom such liabilities are owed." 5 C.F.R. § 2634.305(a). The report must "designate the category of value of the liabilities in accordance with § 2634.301(d)," which lists valuation categories ranging from none to greater than $50 million. *See id.* §§ 2634.305(a), 2634.301(d).

Members of the Executive Branch use OGE Form 278e to file their financial disclosures, reporting liabilities in Part 8 of that form. The instructions in Part 8 direct the filer to "[r]eport liabilities over $10,000 that you, your spouse, or your dependent child owed at any time during the reporting period." U.S. Office of Gov't Ethics, Instructions for Completing Part 8 of the OGE Form 278e: Liabilities.

In addition to the forms, the Office of Government Ethics publishes a Public Financial Disclosure Guide as a "training tool." U.S. Office of Gov't Ethics, Public Financial Disclosure Guide at 10 (2016) ("2016 Guide"). The July 2016 version of the Public Financial Disclosure Guide advised filers that they were "not required to report assets and liabilities of a trade or

business, unless those interests are unrelated to the operations of the business." 2016 Guide at 268. The Guide further advised that

> What constitutes "unrelated" will vary based on the specific circumstances; however, the following general guidelines apply: . . .
>
> Businesses that are not publicly traded: One needs to consider factors such as the type of asset or liability and its relationship to the economic activity conducted by the business. No one factor is necessarily dispositive; however, in many cases, the type of asset itself will demonstrate a nexus between the asset and operations of the business, which removes the need for further analysis. For example, in OGE's experience, a filer would not need to itemize office furniture, equipment, supplies, inventory, accounts receivable, accounts payable, working capital funds, real estate used in the operations of the business, or any mortgages on such real estate.

*Id.* In December 2018, OGE published an updated Public Financial Disclosure Guide applicable to disclosure reports filed after January 1, 2019. U.S. Office of Gov't Ethics, Public Financial Disclosure Guide at 1 (2018) ("2018 Guide"). Under the heading "Other Liabilities That Are Not Reportable," the 2018 Guide instructed filers that

> You do not need to report the following liabilities in Part 8: . . .

- Liabilities of a trade or business, unless you, your spouse, or a dependent child is personally liable (i.e., do not include a loan owed by a LLC, unless you, your spouse, or a dependent child is also personally liable for that same loan).

*Id.* at 209.

Congress also created a system to review and enforce the requirements of the Ethics Act. After the President files a report, the OGE Director must review it and: sign it if it complies with applicable laws and regulations, request additional information, or deem it non-compliant and suggest remedial steps. *See* 5 U.S.C. app. 4 § 106; 5 C.F.R. § 2634.605. When reviewing the report, the "[d]isclosures will be taken at 'face value' as correct, unless there is a patent omission or ambiguity or the official has independent knowledge of matters outside the report." 5 C.F.R. § 2634.605(b)(3). The reviewing official, such as the OGE Director, "shall refer to the Attorney General the name of any individual [who the reviewing official has] reasonable cause to believe has willfully failed to file a report or has willfully falsified or willfully failed to file information required to be reported." 5 U.S.C. app. 4 § 104(b). The Ethics Act empowers the Attorney General to "bring a civil action . . . against any individual who knowingly and willfully falsifies or who knowingly and willfully fails to file or report any information that such individual is required to report pursuant to section 102," and allows for civil penalties of up to $50,000. *Id.* § 104(a)(1). In addition, the Ethics Act criminalizes the knowing and willful falsification or failure to report information required to be reported under section 102. *Id.* § 104(a)(2). The parties agree that Lovitky does not assert a private cause of action under the Ethics Act in this case, and the court accepts that assumption for purposes of this decision.

*See* Appellee Br. 4; Reply Br. 11; Oral Arg. Rec. at 2:25–2:42.

Financial disclosure reports must be made available to the public upon written application. 5 U.S.C. app. 4 §§ 105(a), (b)(2). The Office of Government Ethics also publishes the President's financial disclosure reports on its website without requiring a written application.

President Trump filed his 2017 financial disclosure in May 2018 and his 2018 financial disclosure in May 2019. Both years, President Trump signed OGE Form 278e, thereby "certify[ing] that the statements I have made in this report are true, complete and correct to the best of my knowledge." Both years, the OGE reviewing official certified the report as complying with the Ethics Act.

## II.

In 2017, Lovitky brought a similar lawsuit against President Trump in his official capacity, alleging that then-candidate Trump had violated the Ethics Act by commingling personal and non-personal liabilities in his May 2016 financial disclosure report. *See Lovitky v. Trump*, 308 F. Supp. 3d 250, 253 (D.D.C. 2018). The district court dismissed Lovitky's lawsuit, finding that it did not have the power to issue the relief sought. *Id.* at 260. This court affirmed the dismissal, but on a different ground, holding that because the "Mandamus Act applies only to duties that flow from a defendant's public office," and President Trump was merely a *candidate* for the presidency when the alleged duty arose, the court lacked subject matter jurisdiction over Lovitky's claims. *Lovitky v. Trump*, 918 F.3d 160, 161–63 (D.C. Cir. 2019).

After this court affirmed the dismissal, Lovitky filed this lawsuit, alleging that President Trump violated the Ethics Act

by obscuring liabilities on his May 2018 and May 2019 financial disclosure reports.

The key premise of Lovitky's complaint is that the Ethics Act "requires the President to disclose only personal liabilities, i.e., his personal debts." Compl. ¶ 4. Lovitky does not allege that President Trump failed to include any of the personal liabilities on his disclosures that he was statutorily required to report. Oral Arg. Rec. at 2:57–3:28. Rather, Lovitky alleges that President Trump violated the Act by over-disclosing; that is, by listing debts in Part 8 of his May 2018 and May 2019 financial disclosure reports for which he was not *personally* liable. For example, Lovitky points out that in both years, President Trump disclosed a $5,000,001 to $25,000,000 liability owed to Amboy Bank for a mortgage on Trump National Golf Club Colts Neck LLC. But Lovitky alleges that the mortgage for that property (which he obtained on a New Jersey public records website) states that no member or manager is liable for the debt secured by the mortgage, so President Trump cannot be personally liable. Lovitky supports his deductions by referring to a New York Times article in which the Chief Financial Officer of the Trump Organization was quoted as saying the President "overdisclosed" his liabilities and was personally liable for only an unidentified "small percentage of the corporate debt" disclosed. *Id.* ¶ 45 (Lovitky's emphasis omitted) (quoting Susanne Craig, *Trump's Empire: A Maze of Debts and Opaque Ties*, N.Y. TIMES (Aug. 20, 2016), https://www.nytimes.com/2016/08/21/us/politics/donald-trump-debt.html). Based on this evidence, Lovitky concludes that President Trump "commingled personal liabilities[] with debts of corporate entities," thereby "obscur[ing] the debts that he was required to report." Compl. ¶ 4.

Lovitky contends that President Trump's alleged violations of the Ethics Act "deprived" him of the "opportunity to make an independent judgment as to the integrity of the President" and of the "information required to evaluate the past and future performance of the President." *Id.* ¶ 6. Lovitky alleges that the improper disclosures will preclude him from making informed voting decisions in the 2020 presidential primary and general elections. To remedy these alleged violations, Lovitky asks the district court to issue injunctive and mandamus-type relief directing the President to amend his May 2018 and May 2019 financial disclosure reports to identify his personal liabilities, along with a declaratory judgment that the President violated the Ethics Act and accompanying regulations.

President Trump moved in the district court to dismiss the complaint for lack of subject matter jurisdiction, FED. R. CIV. P. 12(b)(1), and failure to state a claim, FED. R. CIV. P. 12(b)(6). The district court granted the motion, dismissing Lovitky's suit on two independent jurisdictional grounds. *See Lovitky v. Trump*, No. CV 19-1454 (CKK), 2019 WL 3068344, at *1 (D.D.C. July 12, 2019). First, the district court found that although Lovitky had alleged an injury in fact, he had not satisfied the constitutional standing requirements because his alleged injury was not redressable by a federal court, reasoning that the court could not issue mandamus, injunctive, or declaratory relief against a sitting President. *Id.* at *8, *10. Second, the district court found that it did not have subject matter jurisdiction to hear Lovitky's claims because he had not established the elements of mandamus jurisdiction. *Id.* at *10. The court added that if it had not dismissed the case on jurisdictional grounds, it would have refused to exercise its discretion to grant equitable or declaratory relief against the President. *Id.* at *15.

## III.

Lovitky appeals, contending that he established his standing, that the district court possessed subject matter jurisdiction, and that the district court issued an "ultra vires advisory opinion" by "hypothetically assuming" it had jurisdiction. *See* Appellant's Br. 4–5. Just like in Lovitky's prior appeal, the court begins — and ends — its analysis with subject matter jurisdiction, holding that Lovitky "lacks the clear right to relief based on a clear duty to act that is necessary to obtain mandamus relief." *See Walpin v. Corp. for Nat'l & Cmty. Servs.*, 630 F.3d 184, 188 (D.C. Cir. 2011).

## A.

Before proceeding to the merits of a case, the court must confirm that it has Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Where, as here, "both standing and subject matter jurisdiction are at issue . . . a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other." *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). On appeal, this court reviews the district court's dismissal for lack of jurisdiction de novo and accepts all factual allegations in the complaint as true. *Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002).

In his complaint, Lovitky invoked three statutory bases for jurisdiction: 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus). The court can easily dispense with the first two statutes as sources of jurisdiction before turning to the third.

As this court explained in Lovitky's prior lawsuit, the declaratory judgment statute, 28 U.S.C. § 2201, "is not an independent source of federal jurisdiction." *Lovitky*, 918 F.3d at 161 (internal quotation omitted). "Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (internal quotations and alterations omitted). Thus, "[r]esort to the Declaratory Judgment Act will not fill a gap in subject matter jurisdiction." 14 Helen Hershkoff, *Federal Practice & Procedure* § 3655 (4th ed. 2019).

Next, Lovitky has offered no support for his bare assertion that the federal question statute, 28 U.S.C. § 1331, provides for jurisdiction for the court to hear his lawsuit. This court has previously explained that "a request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus in this context, where the injunction is sought to compel federal officials to perform a statutorily required ministerial duty." *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) (citing *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 918 n.1 (D.C. Cir. 1980)). Moreover, in his reply brief and at oral argument, Lovitky conceded that he asserts no cause of action other than the Mandamus Act. *See* Reply Br. at 11; Oral Arg. Rec. at 2:25–2:42. Therefore, neither can the federal question statute alone serve as the source of federal jurisdiction. *Cf. Lovitky*, 918 F.3d at 161–62.

That leaves only the Mandamus Act as a potential source of jurisdiction. That statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The statute uses the term "in the nature of mandamus" because "Rule 81(b) of the Federal Rules of Civil Procedure long ago abolished the writ of mandamus in

the district courts," although it "permitted '[r]elief heretofore available by mandamus' to be obtained by actions brought in compliance with the rules." *In re Cheney*, 406 F.3d 723, 728–29 (D.C. Cir. 2005) (en banc) (quoting FED. R. CIV. P. 81(b)).

"A court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (internal quotation omitted). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). In other words, "mandamus jurisdiction under § 1361 merges with the merits." *In re Cheney*, 406 F.3d at 729; *see also* 14 Helen Hershkoff, *Federal Practice & Procedure* § 3655 (4th ed. 2019) ("As many lower courts have recognized, whether jurisdiction exists under Section 1361 'is intertwined with the merits' because the existence of a legal duty owed to the plaintiff is critical to whether adjudicative power is present."). Such "jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation omitted), an exception to the ordinary rule that "[t]he question whether a federal statute creates a claim for relief is not jurisdictional," *Nw. Airlines, Inc. v. Cty. of Kent*, 510 U.S. 355, 365 (1994).

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation omitted). "Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds compelling equitable grounds." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (internal

quotation and alteration omitted). Ultimately, the "party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." *Power*, 292 F.3d at 784 (internal quotations omitted).

**B.**

The court will discuss the first two jurisdictional elements for mandamus-type relief — clear right to relief and clear duty to act — concurrently, as it often does. *See, e.g.*, *id.* at 784–86. Although the term "duty" as used in section 1361 "must be narrowly defined . . . [t]his does not mean that mandamus actions are ruled out whenever the statute allegedly creating the duty is ambiguous." *In re Cheney*, 406 F.3d at 729 (citing *13th Reg'l Corp. v. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980)). Instead, the court must interpret the statute and if, "once interpreted," the statute "creates a peremptory obligation for the officer to act, a mandamus action will lie." *13th Reg'l Corp.*, 654 F.2d at 760. Accordingly, in order to survive a motion to dismiss, Lovitky must have plausibly alleged that the Ethics Act, once interpreted, imposed a clear and indisputable duty on President Trump to differentiate personal from business liabilities. *See Citizens for Responsibility & Ethics in Washington v. Trump*, 924 F.3d 602, 606 (D.C. Cir. 2019). He has not done so.

The Ethics Act uses the term "total liabilities." *See* 5 U.S.C. app. 4 § 102(a)(4). Lovitky contends that the statute "obviously refers to liabilities of the filer, as opposed to liabilities of some unidentified third party." Appellant's Br. 39. But the text of the Act does not clearly direct filers to disclose only their "personal liabilities." Nor does the text clearly prohibit filers from listing debts for which they are not personally responsible. To the contrary, the Ethics Act requires filers to report some liabilities for which they are not personally

liable, such as certain debts owed by their spouse or dependent children.  *See* 5 U.S.C. app. 4 § 102(e)(1)(E).  In addition, the 2016 version of the OGE Guide advised filers that they must report "liabilities of a trade or business . . . unrelated to the operations of the business," for which the filer would not necessarily be personally liable.  2016 Guide at 268.

Lovitky argues that it "would have been absurd for Congress to have required disclosure of the debts of an unrelated third party, as such debts would not be likely to create conflict of interest issues."  Appellant's Br. 39.  Lovitky appears to be invoking what this court has referred to as the absurdity doctrine or the canon against producing absurd results.  *See, e.g.*, *W. Minn. Mun. Power Agency v. FERC*, 806 F.3d 588, 596 (D.C. Cir. 2015).  A "statutory outcome is absurd if it defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it."  *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (internal quotations and alteration omitted).  Here, Lovitky has set up a straw man by arguing that it would have been absurd for Congress to require disclosure of non-personal debts: the question before the court is whether Congress clearly forbade such disclosures or, as Lovitky frames it in his reply brief, required differentiation.  Not forbidding a filer to list liabilities beyond those required to be disclosed, or not requiring differentiation, does not render the statute nonsensical or superfluous.  Given the threat of civil penalties and criminal prosecution, a cautious filer, or one with complicated financial holdings, may want to err on the side of over-disclosure.  In addition, there are plausible reasons why Congress may have written the statute to not forbid, or at least allow, inclusion of liabilities that are not required to be disclosed.  *Cf. Landstar Express Am., Inc. v. Fed. Mar. Comm'n*, 569 F.3d 493, 498–99 (D.C. Cir. 2009).  For example,

public officials disclosing liabilities owed by entities they control could promote the statute's purposes of deterring potential conflicts of interest and helping citizens judge the performance and integrity of those officials. *See* S. REP. NO. 95-170, at 21–22 (1978). In sum, Lovitky has not met the "high threshold," *Cook*, 594 F.3d at 891, needed to show that the President's reading of the Ethics Act is absurd.

Next, Lovitky contends that the OGE regulations support his interpretation of the Act. The regulations require that "each financial disclosure report filed pursuant to this subpart must identify and include a brief description of the filer's liabilities." 5 C.F.R. § 2634.305(a). And the regulations explain that the term "filer" is "used interchangeably with 'reporting individual.'" *Id.* § 2634.105(g). But like the statute, the regulations do not *prohibit* a filer from disclosing more than what is required or direct a filer to differentiate the debts. Thus, the regulations do not create a clear and indisputable right to relief.

Likewise, though OGE's instructions for completing Part 8 of Form 278e direct the filer to "[r]eport liabilities over $10,000 that you, your spouse, or your dependent child owed at any time during the reporting period," they do not clearly prohibit the filer from reporting liabilities owed by a closely held organization. *See* U.S. Office of Gov't Ethics, Instructions for Completing Part 8 of the OGE Form 278e: Liabilities.

Lovitky also relies on the Public Financial Disclosure Guides published by OGE, which provide additional advice to filers and compliance officials. The 2016 version of the Guide (applicable to 2018 disclosures) advised filers that they were "not required to report assets and liabilities of a trade or business, unless those interests are unrelated to the operations

of the business." 2016 Guide at 268. Thus, OGE itself advised filers to report at least some non-personal liabilities. The 2018 version of the Guide (applicable to 2019 disclosures) provided different advice, telling filers that they "do not need to report the following liabilities in Part 8: . . . Liabilities of a trade or business, unless you, your spouse, or a dependent child is personally liable (i.e., do not include a loan owed by a LLC, unless you, your spouse, or a dependent child is also personally liable for that same loan)." 2018 Guide at 209. Although both versions of the Guide counseled filers that they were not required to report certain non-personal liabilities, neither Guide forbade filers from doing so nor mandated that filers specifically identify personal liabilities as distinct from non-personal liabilities.

Despite relying on the Guides in his opening brief, Lovitky concedes in his reply brief that the "Guide does not have the force and effect of law" and that it "is not binding upon the President." Reply Br. 25. This is an apt concession, because there is no evidence to suggest that the advice provided in the Guides is law. To the contrary, the 2016 Guide expressly stated that it was a "training tool" and that "applicable statutes and regulations are the final authorities."[1] 2016 Guide at 10. While undoubtedly helpful to filers, the OGE Guides "would hardly be sufficient to transform [the statute's] silence on the subject . . . into the 'clear duty' required to justify a grant of mandamus." *Power*, 292 F.3d at 786.

In addition, Lovitky leans on the Ethics Act's requirement that the annual report include a "full and complete statement"

---

[1] A Welcome page (on which this "Disclaimer" appears in the 2016 version of the Guide) for the 2018 Guide has not been included in the Joint Appendix and the court is unaware whether this same disclaimer was provided in the later version.

of liabilities, arguing that it "most certainly encompasses a duty to specifically identify personal liabilities when they are commingled with non-personal liabilities." Appellant's Br. 41 (citing 5 U.S.C. app. 4 § 102(b)(1)). Similarly, Lovitky contends that the President's certification of his financial disclosures as "true, complete and correct" and the requirement that reviewing officials take the disclosures at face value impose an identification duty. But Lovitky provides no support for these arguments, other than his interpretation of the statute. The "full and complete" provision does not clearly prohibit filers from disclosing non-personal liabilities or require them to differentiate such liabilities from their personal liabilities. To the contrary, particularly in view of the 2016 Guide's advice to disclose some business debts, it provides at least a plausible reason for a prudent filer to err on the side of over-disclosure if doubtful about whether liabilities of corporate entities must be reported. Likewise, the certification and face value standard do not impose a clear duty to separate personal from non-personal debts.

Next, Lovitky reasons that "there is no functional distinction between an outright refusal to disclose personal liabilities, and disclosing a mixture of personal and non-personal liabilities and requiring ethics officials or members of the public to guess which are the personal liabilities," asserting that they represent the same duty. *See* Appellant's Br. 41–42. But there is a distinction, at least for purposes of discerning whether there is a clear duty supporting mandamus-type relief. Refusing to disclose liabilities violates the Ethics Act's requirement that a filer make "a full and complete statement" of "total liabilities." *See* 5 U.S.C. app. 4 § 102(a). To the contrary, as discussed, the Act neither clearly prohibits filers from commingling liabilities nor directs them to differentiate the types of liabilities.

Finally, Lovitky argues that President Trump's alleged commingling of liabilities "frustrate[s]" the "basic purposes of the statute" because "a non-personal liability of a business entity may have little or no influence on official decision-making." Appellant's Br. 42–43. This argument, however, confronts only one stated goal of the Act (deterring conflicts of interest) and ignores the others (e.g., increasing public confidence in the federal government and demonstrating the integrity of government officials). *See Oakar*, 111 F.3d at 148. More fundamentally, whether the purposes of the statute are best served by requiring, permitting, or forbidding non-personal liabilities from being disclosed without differentiation is a policy judgment that requires balancing competing interests, a task entrusted to Congress. *See, e.g.*, *Diamond v. Chakrabarty*, 447 U.S. 303, 317–18 (1980). As one example, Congress decided that filers need not expressly differentiate between their own debts and debts of their spouses. The potential frustration of the statutory purposes does not make President Trump's alleged violation "so plainly prescribed as to be free from doubt and equivalent to a positive command." *See Consol. Edison Co. of N.Y., Inc. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002) (internal quotation omitted).

That said, Lovitky has identified what he perceives as a troubling gap in the Ethics Act, warning that there is "no limit to the ways in which a creative filer could obscure his assets and liabilities by commingling them with the assets and liabilities of businesses, non-immediate family members, or others." Reply Br. 20. At oral argument, the court posed a hypothetical situation in which a filer voluntarily reports liabilities of family members and friends to willfully obscure the debts the statute requires to be disclosed. Oral Arg. Rec. at 24:35–25:31. The government first responded that the court's hypothetical posed a "closer case," before ultimately taking the position that it "would not be a clear violation of the statute on

its face," because the "statute does not prohibit [a filer] from listing additional liabilities." *Id.* at 25:31–27:22. In response, Lovitky argued that a filer who "obscures the information that he was required to report" by disclosing more than the Act requires has "fundamentally not complied with the statute." *Id.* at 30:22–30:50. The court need not resolve how it would handle this hypothetical situation, however, because Lovitky has not alleged that it is presented here. But Lovitky has highlighted a potential for mischief. Although the courts lack jurisdiction to order the relief Lovitky seeks, he may, of course, use the political process to press for legislative or regulatory reforms.

Because Lovitky has not shown that there is a "clear and compelling duty under the [Ethics Act] as interpreted" for President Trump to differentiate his personal from his non-personal liabilities on his May 2018 and May 2019 financial disclosure reports, the "court must dismiss the action." *See In re Cheney*, 406 F.3d at 729. The district court thus had no appropriate occasion to announce how it would have ruled on the equitable considerations because "[w]hen a court lacks subject-matter jurisdiction" — as the district court properly found — "it has no authority to address the dispute presented." *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017). Accordingly, the court vacates the portion of the district court's decision addressing whether the equities would favor issuing mandamus-type relief but otherwise affirms the judgment of the district court dismissing the case for lack of jurisdiction.