# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 24-5234

**September Term, 2025**

FILED ON: JANUARY 20, 2026

MILTON S. HERSHEY MEDICAL CENTER, ET AL.,
       APPELLANT

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,
       APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-01382)

Before: SRINIVASAN, *Chief Judge*, WALKER, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the district court's order granting summary judgment be **AFFIRMED.**

I.

A.

Medicare entitles hospitals that operate approved medical residency training programs to reimbursement for certain costs related to the training of physicians. *See* 42 U.S.C. § 1395ww(h). To obtain reimbursement for those "direct graduate medical education" (DGME) costs, *id.*, hospitals must file annual "cost reports" with private insurance companies that contract with the Centers for Medicare & Medicaid Services (CMS), documenting their fiscal year's costs and Medicare's apportioned share. *See* 42 C.F.R. §§ 421.3, 413.24(f). A contractor's determination of the total reimbursement owed to each hospital is considered final "following the close of the provider's cost reporting period." *Id.* § 405.1801(a)(1).

Final cost reports, however, can be reopened "under guidelines established by the Secretary in regulations." 42 U.S.C. § 1395ff(b)(1)(G). The current reopening regulation vests contractors with exclusive jurisdiction to reopen their determinations, "subject to a directive from CMS to reopen or not reopen the determination." 42 C.F.R. § 405.1885(c). Accordingly, "CMS *may* direct a contractor . . . to reopen and revise any matter . . . by providing *explicit direction* to the contractor . . . to reopen and revise." *Id*. § 405.1885(c)(1) (emphasis added). As an "[e]xample[]," the regulation states:

> A contractor determination . . . must be reopened and revised if CMS provides explicit notice to the contractor that the contractor determination . . . is inconsistent with the applicable law, regulations, CMS ruling, or other interpretive rules, general statements of policy, and rules of agency organization, procedure, or practice established by CMS in effect, and as CMS understood those legal provisions, at the time the determination or decision was rendered by the contractor.

*Id.* § 405.1885(c)(1)(i).

The regulation further limits reopening in two relevant respects. First, a determination can be reopened upon request only if the request is received within "3 years after the date of the determination or decision that is the subject of the requested reopening," *id.* § 405.1885(b)(2)(i), absent "fraud or similar fault" that permits reopening "at any time," *id.* § 405.1885(b)(3). Second, a "change of legal interpretation or policy by CMS in a regulation, CMS ruling, or other interpretive rules, . . . whether made in response to judicial precedent or otherwise, is not a basis for reopening." *Id*. § 405.1885(c)(2).

B.

Congress enacted a DGME payment formula directing the Secretary of Health and Human Services to reimburse only the "proportion of direct graduate medical education costs of hospitals associated with the provision of services." 42 U.S.C. § 1395ww(h)(1). The payment is based in part on a hospital's weighted average number of full-time-equivalent (FTE) residents. *Id.* § 1395ww(h)(3)(A)–(B). The statute directs the Secretary to "establish rules . . . for the computation of the number of full-time-equivalent residents in an approved medical residency training program." *Id.* § 1395ww(h)(4)(A). For cost reporting periods beginning on or after October 1, 1997, Congress established a cap that effectively froze a hospital's reimbursable FTE count at the number of residents and fellows it trained in 1996. *Id.* § 1395ww(h)(4)(F)(i).

In 1997, the Secretary promulgated a regulation addressing "situations in which a hospital increases the number of FTE residents over the cap." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45966, 46005 (Aug. 29, 1997). When a hospital "exceed[ed] the cap, its weighted FTE count [wa]s reduced

commensurate with the amount by which the hospital exceed[ed] the cap," thereby diminishing its Medicare reimbursement. *Milton S. Hershey Med. Ctr. v. Becerra (Hershey I)*, No. 19-2680, 2021 WL 1966572, at *2 (D.D.C. May 17, 2021). In 2020, various teaching hospitals that employed FTE residents above their respective 1996 caps challenged the regulation, arguing that it unlawfully capped reimbursements to which they were entitled. *Id.* at *3. The *Hershey I* district court agreed, striking down the regulation as inconsistent with the Medicare statute. *Id.* at *5–7.

In response to *Hershey I*, the Secretary issued a rule modifying the formula for calculating FTE residents to comply with the court's decision. Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2023 Rates, 87 Fed. Reg. 48780, 49067 (Aug. 10, 2022) (FY 2023 Rule). The effect of the new formula, when applicable, was to increase the reimbursement to hospitals that employed FTE residents exceeding their respective 1996 caps. The Rule's new formula applies "prospectively for all teaching hospitals," but also retroactively to cost reporting periods starting on or after October 1, 2001. *Id.* at 48784; *see* 42 C.F.R. § 413.79(c)(2)(iii). The Rule provided, however, that it "would not be the basis for reopening final settled [cost reports]." FY 2023 Rule, 87 Fed. Reg. at 49067.

C.

In this case, thirty-one hospitals (Hospitals) seek to apply the FY 2023 Rule to their final settled cost reports for certain fiscal years beginning on October 1, 2001. In the relevant years, the Hospitals all employed more FTE residents than allowed under their 1996 cap. Most of the Hospitals were plaintiffs in *Hershey I*, where the district court, as explained, invalidated the Secretary's prior payment formula on the ground that it unlawfully limited DGME reimbursements. After the Secretary established a modified payment formula in the FY 2023 Rule, the Hospitals unsuccessfully sought administrative review to compel the agency to apply the Rule's new formula to final settled cost reports.

The Hospitals then filed the present action in district court, seeking a writ of mandamus directing the Secretary to reopen and revise their final settled cost reports pursuant to the formula in the FY 2023 Rule. The district court granted summary judgment in favor of the Secretary, concluding that the Secretary is "not under a clear, non-discretionary duty to reopen the hospitals' cost reports." *Milton S. Hershey Med. Ctr. v. Becerra*, Nos. 23-1382, 23-1384, 2024 WL 3673614, at *10 (D.D.C. Aug. 6, 2024). The Hospitals now appeal.

II.

A writ of mandamus is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)). A party seeking mandamus relief must show that: (i) it has a "clear right to relief," (ii) the "defendant has a clear duty to act," and (iii) there is "no other

adequate remedy available." *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010)). The Hospitals have not met the heavy burden required to demonstrate an entitlement to mandamus relief.

*First*, the terms of the governing regulation do not support—and in fact foreclose—the Hospitals' claim. Under the regulation, "CMS *may* direct a contractor" to "reopen and revise any matter . . . by providing *explicit direction*" to that effect. 42 C.F.R. § 405.1885(c)(1) (emphasis added). Here, CMS did not exercise its discretion to require reopening by providing "explicit direction" to do so. To the contrary, CMS issued an explicit directive *not* to reopen the relevant cost reports: the FY 2023 Rule expressly provided that it "would not be the basis for reopening final settled [cost reports]" like the ones at issue here. FY 2023 Rule, 87 Fed. Reg. at 49067. The Rule's new formula instead applies to "payments for past *open* cost years." *Id.* (emphasis added).

In arguing that the Rule's revised formula nonetheless must be applied to their final settled cost reports, the Hospitals principally rely on an example set out in a subparagraph in the regulation. The example states in part that a "contractor determination . . . must be reopened and revised if CMS provides explicit notice to the contractor that the contractor determination . . . is inconsistent with applicable law." 42 C.F.R. § 405.1885(c)(1)(i). According to the Hospitals, the agency provided "explicit notice" by stating in the FY 2023 Rule that reimbursements under the previous formula were inconsistent with law, thereby purportedly triggering an obligation to reopen and revise final settled cost reports issued under the prior formula.

The Hospitals' reading of the example cannot carry the day, as it would contradict the express regulatory language ostensibly illustrated by the example. The regulation makes clear that CMS "may" in its discretion choose to require reopening and revision through an "explicit direction," *id.* § 405.1885(c)(1)(i), which necessarily means that the agency equally retains discretion to give an "explicit direction" against reopening. *See id.* § 405.1885(c) (noting that reopening is "subject to a directive from CMS to reopen *or not reopen* the determination") (emphasis added). The agency's FY 2023 Rule did exactly that, expressly forbidding reopening of final settled cost reports. The Hospitals' reading of the regulatory example would effectively negate that exercise of the discretion accorded the agency by the regulation. The better understanding of the regulatory example is that an "explicit notice" of the kind it sets out *can* constitute an "explicit direction" to reopen, not that it necessarily and inexorably does so even if, as here, the agency specifically expresses an intention to foreclose reopening.

At any rate, the regulatory example is otherwise inapplicable by its own terms. The example contemplates reopening if the agency gives "explicit notice" that the determination was "inconsistent with the applicable law, . . . in effect, and as CMS understood those legal provisions, at the time the determination . . . was rendered." *Id.* § 405.1885(c)(1)(i). Here, though, nothing in the FY 2023 Rule indicates that CMS understood at the time of the final settled cost reports that the reimbursement was inconsistent with applicable law. Rather, that understanding came about many years later, after the decision in *Hershey I*. In fact, the FY 2023 Rule characterizes its

application of its revised formula to "open" cost reports from previous years as "retroactive," FY 2023 Rule, 87 Fed. Reg. at 49067, reinforcing that the Rule's post-*Hershey I* understanding of applicable law was not in effect or understood by CMS at the time of the reports. Rather, the agency's prior formula—the one later displaced by the FY 2023 Rule—reflected its understanding of the law at that time.

*Second*, there is a separate regulatory bar against reopening nearly all of the relevant cost reports in the circumstances of this case. A final settled cost report cannot be reopened upon request unless the request is made "no later than 3 years after the date of the determination." 42 C.F.R. § 405.1885(b)(2)(i). The Hospitals sought reopening in 2023, much more than three years after settlement of almost all of the closed cost reports in question. And the Hospitals offer no persuasive reason to conclude that they can avoid the three-year period on the basis that the determinations were "procured by fraud or similar fault." *Id.* § 405.1885(b)(3).

*Third,* and finally, the regulation independently forbids reopening if based on a "change of legal interpretation or policy by CMS in a regulation, CMS ruling, or other interpretive rules . . . in response to judicial precedent." *Id.* § 405.1885(c)(2). That is precisely what happened here. The agency initially promulgated the previous DGME payment formula, the district court in *Hershey I* invalidated it, and the agency subsequently revised the formula in the FY 2023 Rule expressly as a response to the court's decision. That is a "change of legal interpretation or policy . . . in response to judicial precedent," which "is not a basis for reopening." *Id.*

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's grant of summary judgment to the Secretary.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:    /s/
Michael C. McGrail
Deputy Clerk